[L. A. No. 29540. In Bank. Apr. 30, 1968.]

RICHARD MENCHACA et al., Plaintiffs and Appellants,
HELMS BAKERIES, INC., Defendant and Respondent.

538

Lawrence William Steinberg and Martin Sosin for Plaintiffs and Appellants.

George A. Kuittinen and Jean Wunderlich for Defendant and Respondent.

TOBRINER, J.—This is an action by plaintiffs Richard and Barbara Menchaca for damages resulting from the wrongful death of their 22-month-old son, Richard Menchaca, Jr., who was killed when run over by a bakery truck operated

by an employee of defendant Helms Bakeries. Helms denied its negligence and asserted the contributory negligence of the child's mother, Barbara Menchaca. The trial resulted in a jury verdict for defendant, and plaintiffs' appeal.

We shall explain why we have concluded that the court committed prejudicial error in (1) directing the jury that there was no evidence that the truck was negligently equipped, (2) refusing an instruction describing the statutory duty of a driver to sound his horn, and (3) rejecting an instruction on the general duties involved in the exercise of due care. On the other hand, we find no error in the court's refusal to give an instruction requiring that the driver exercise extreme caution. Nor does the record demonstrate prejudicial error in defense counsel's reference to matters within his personal knowledge; if any misconduct occurred, it was promptly corrected by the trial court.

On the day of the accident, defendant's employee, driving the bakery truck on a retail delivery route, stopped at the Blanchard house to fill a standing order for a loaf of bread. As he approached he blew a whistle to attract customers. The driver knew that all along his route children frequently responded to the whistle and purchased bakery products. He testified that on this occasion he saw four children running down the Blanchard driveway and a fifth child coming from another house; he pulled to the left curb so that they could avoid crossing the street.

Five children, including Richard Menchaca, Jr., had been playing in the backyard of the Blanchard residence. Mrs. Menchaca testified that she had left them there about 10 minutes before the accident, instructing them not to open the fence gate without asking permission. She stated that she frequently checked on the children through a window, as she put away some groceries for Mrs. Blanchard, but when she looked out the last time the children had disappeared. She went out to find them and had reached the driveway when she heard her son scream.

Apparently one of the children, other than Richard, who was too small, opened the gate of the fence and the older ones ran to the bakery truck, where they took delivery of the bread and bought doughnuts. The driver testified that selling the doughnuts required him to turn to the side and rear of the truck. Although he did not blow his horn before leaving, he looked to see if the children whom he had served had moved away from the truck. Then he started the engine and began to

pull forward; at that moment, Richard, who was standing in front of the truck, was struck. When the driver felt the bump and heard Richard scream, he applied his brakes. The truck came to a stop several feet past Richard's body.

### 1. *Direction on the Question of Negligent Equipage*

The truck involved in the accident roughly resembles the shape of a box, with a front windshield beginning 52 inches above the roadway. A cake advertisement on the side window of the truck partially obstructs the side vision. The driver sits or stands about six and one-half feet from the front and cannot see the vicinity adjacent to the front bumper. Two mirrors on the side of the truck assist rear vision, and a mirror extending from the front center of the windshield enables the driver to see the middle two feet of the six-foot-long bumper.

In the closing argument plaintiffs' attorney undertook to discuss the subject of negligent equipage of the truck: "[W]e are considering not just the negligence of [the driver] but the negligence, if any, of the company. I mean, the plaintiffs are asserting the negligence of the company with regard to the mode of equipment and maintenance of that truck, which you have only to look at the truck to see what I mean." Halfway through counsel's next sentence, the court interrupted and on its own motion admonished the jury that "[t]here is no evidence in this case that the truck was improperly constructed or was an improper truck to be used for this purpose. . . ." In fact, plaintiffs had not argued that the truck was improperly constructed; they had contended that the truck was improperly equipped. The court's admonition, however, effectively foreclosed arguments, both as to the construction and the equipment of the truck.

Considerable evidence indicated that the truck had been negligently equipped. Defendant planned and intended the truck to attract children to purchase bakery products from it; defendant knew that a substantial blind spot in front of the truck obscured the vision of the driver; defendant nevertheless equipped the truck with a mirror that revealed to the driver only the central third of the bumper. Surely defendant bore an obligation to equip the truck so as to provide for its safe operation and avoid danger to its expected customers, who were small children.    The duty arising from the relationship of vendor-purchaser encompasses at the least the use of equipment that will not expose the purchaser

to danger. (See *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 235-236, 239 [60 Cal.Rptr. 510, 430 P.2d 68].)

The testimony showed that Richard became the unfortunate victim of defendant's alleged breach of duty. Richard, who was 36 inches tall, was standing immediately in front of the truck and probably did not come within the driver's vision because of the truck's blind spot; yet additional mirrors would have made him clearly visible. The court erred, therefore, in removing from the jury's consideration the factually disputed issue of whether or not the truck was negligently and dangerously equipped. (Cf. *Forte* v. *Schiebe* (1956) 145 Cal.App.2d 296, 300-301 [302 P.2d 336].)

Defendant replies that neither the pleadings nor the pretrial statement of issues raised the issue of the *construction* of the truck. Although we do not reach that question, we note that even if defendant's position were correct, it overlooks the possibility that a well-constructed truck may be negligently *equipped*. The complaint alleges that "the [defendant] . . . negligently entrusted, *managed, maintained,* drove and operated the said Helms truck" (italics added) and the plaintiffs' pretrial statement of issues asserts that "defendant HELMS BROS., INC., was negligent in . . . use, maintenance, and *equipment* of the truck . . . ." (Italics added.)

Hence defendant was adequately warned that plaintiffs contended that equipage of the truck constituted an issue for trial.[1]

### 2. *Instruction on the Statutory Duty to Sound the Horn*

Vehicle Code section 27001 requires that "The driver of a motor-vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. The horn shall not otherwise be used." The authorities clearly indicate the propriety of an instruction in the words of the statute if substantial evidence supports its rendition. (*Rush* v. *Lagomarsino* (1925) 196 Cal. 308, 320 [237 P. 1066]; *Weiss* v. *Baba* (1963) 218 Cal.App.2d 45, 51-52 [32 Cal.Rptr. 137];

---

[1] Although plaintiffs did not raise the issue of negligent equipage in their petition for hearing, the question was briefed by both parties and may be reviewed by this court. An order granting a petition for hearing transfers the entire cause here (*Knouse* v. *Nimocks* (1937) 8 Cal.2d 482, 483-484 [66 P.2d 438]; *Estate of Kent* (1936) 6 Cal.2d 154, 156 [57 P.2d 901]; *Estate of Stierlen* (1926) 199 Cal. 140, 144 [248 P. 509]), and the case is then to be decided on all issues, as if originally appealed to this court, regardless of the grounds relied on in the petition. (*Martin* v. *Howe* (1922) 190 Cal. 187, 188 [211 P. 453]; *In re Los Angeles County Pioneer Soc.* (1956) 141 Cal.App.2d 563, 567 [297 P.2d 72].)

*Jones* v. *Maynard* (1956) 141 Cal.App.2d 643, 649 [297 P.2d 461] ; *Freeland* v. *Jewel Tea Co.* (1953) 118 Cal.App.2d 764, 769 [258 P.2d 1032] ; see also *Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30, 37 [286 P.2d 21].)

Although defendant argues that plaintiffs failed to produce a sufficiently strong showing that the horn was ''reasonably necessary to insure safe operation,'' the contention must fail. Defendant urges that the driver testified that he saw only five children and observed that all of them had returned to a position of safety before he started his vehicle. Nothing, however, compelled the jury to believe either that the driver saw only five children or that he concluded that the children whom he did see were clear of the truck. Further, the driver does not satisfy his duty of due care by an exercise of caution as to the children he actually sees; he must anticipate that other children may be in the vicinity. (*Hilyar* v. *Union Ice Co., supra,* 45 Cal.2d 30, 36.) In any event, the issue of whether, knowing of the presence of children, the driver should have sounded his horn constitutes a question of fact whose ultimate resolution rests with the jury.

As we have explained, the structure and equipage of the truck precluded the driver's sight of a child who might be in front of his bumper. Thus, substantial evidence clearly supports plaintiffs' theory that under such circumstances the driver should have given warning of his starting the truck; that it was ''reasonably necessary'' to sound the horn. This theory, supported as it was in the evidence, should have been expressed in an instruction and submitted to the jury. (*Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795] ; *Weiss* v. *Baba, supra,* 218 Cal.App.2d 45, 51.)

Defendant argues that a direction to the jury that a horn shall be sounded when ''reasonably necessary to insure safe operation'' does no more than restate the rule which was expressed in any event in other instructions, to the effect that the driver must behave as a reasonably prudent man (cf. *Tossman* v. *Newman* (1951) 37 Cal.2d 522, 525 [233 P.2d 1] ; *Hughes* v. *MacDonald* (1955) 133 Cal.App.2d 74, 80-81 [283 P.2d 360]). The requested instruction, however, focuses on the peculiar circumstances of the case and calls the jury's attention to a ground for a finding of negligence that might not otherwise be considered. (Cf. *Borenkraut* v. *Whitten* (1961) 56 Cal.2d 538, 545 [15 Cal.Rptr. 635, 364 P.2d 467].)

Finally, however, a question arises as to the form of the instruction as submitted by plaintiffs. The requested instruction omitted the last sentence of the section: ''The horn shall not otherwise be used.'' Normally the trial court may refuse an instruction that, as requested, has not been properly framed. (*Faulk* v. *Soberanes* (1961) 56 Cal.2d 466, 470-471 [14 Cal.Rptr. 545, 363 P.2d 593]; *Shaw* v. *Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158 [323 P.2d 391]; *Tossman* v. *Newman, supra,* 37 Cal.2d 522, 525; but see *Herbert* v. *Lankershim* (1937) 9 Cal.2d 409, 482 [71 P.2d 220]; *Pedesky* v. *Bleiberg* (1967) 251 Cal.App.2d 119, 124-125 [59 Cal.Rptr. 294]; *Thomas* v. *Buttress & McClellan, Inc.* (1956) 141 Cal.App.2d 812, 819 [297 P.2d 768].) The instant instruction, however, so far as it went, correctly and accurately stated the rule. The omission should not have been misleading; common knowledge tells us that horns should not be sounded unnecessarily and indiscriminately. Plaintiffs were not required to cover in their requested instructions each and every point favorable to defendant. If defendant had decided that further instruction about the statute would have been helpful, it could have submitted such an instruction. (*Gavin* v. *Watt* (1956) 144 Cal.App.2d 238, 242-243 [300 P.2d 842]; *Ackerman* v. *Griggs* (1930) 109 Cal.App. 365, 367-368 [293 P. 115].)

3. *Instructions on the Common Law Duty of a Truck Driver*

Plaintiffs urge that their proffered instructions regarding the duty of care of the driver of a truck should have been given. BAJI Instruction 151 declares that a driver bears the duty ''to exercise ordinary care to avoid placing himself or another person in danger; to use like care to avoid an accident from which injury might result; to be *vigilant* at all times, keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep the vehicle under such *control* that, to avoid a collision with any person or with any other object, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position.'' (Italics added.)

Since this instruction has been approved in the past (*Wickesser* v. *Burns* (1965) 232 Cal.App.2d 344, 347 [42 Cal.Rptr. 856]; *Scott* v. *Mackey* (1958) 159 Cal.App.2d 690, 696 [324 P.2d 703]) and since the instruction covered issues presented by the evidence, the court should have given it. The evidence

presented questions concerning (1) the driver's vigilance since he did not see Richard, and (2) his control of the vehicle since his testimony indicated that the truck stopped, not on first impact when Richard may not have been mortally injured, but only after the whole truck had passed over his body; these issues were not specifically covered by other instructions.

Plaintiffs also requested that the jury be instructed that "Because of the great danger involved in the operation and driving of a motor truck, a person of ordinary prudence will exercise extreme caution when engaged in such an activity. Hence it is the duty of anyone engaged in such an operation to exercise extreme caution."

The quantum of care required by ordinary prudence varies with the danger of the activity undertaken; an instruction in the form requested by plaintiffs is appropriate to the case in which the defendant uses highly explosive or inflammable materials, firearms, or other inherently hazardous instrumentalities with which the slightest misjudgment may constitute negligence. (*Borenkraut* v. *Whitten, supra,* 56 Cal.2d 538, 545; *Jensen* v. *Minard* (1955) 44 Cal.2d 325, 328 [282 P.2d 7]; *Signorelli* v. *Potter* (1954) 43 Cal.2d 541, 543 [275 P.2d 449].) Driving a motor vehicle may be sufficiently dangerous to warrant special instructions (*Cucinella* v. *Weston Biscuit Co.* (1954) 42 Cal.2d 71, 79-80 [265 P.2d 513]; *Raymond* v. *Hill* (1914) 168 Cal. 473, 482-483 [143 P. 743]; *McNear* v. *Pacific Greyhound Lines* (1944) 63 Cal. App.2d 11, 18-19 [146 P.2d 34]; *Dawson* v. *Lalanne* (1937) 22 Cal.App.2d 314, 315 [70 P.2d 1002]), but it is not so hazardous that it always requires "extreme caution." (Cf. *Benwell* v. *Dean* (1965) 227 Cal.App.2d 226, 233-234 [38 Cal.Rptr. 542].)

We believe that the trial court's instruction that "the amount of caution required in the exercise of ordinary care depends upon the danger . . . in the particular situation" and "oné dealing with children must anticipate the [often imprudent] behavior of children . . ." was preferable to that suggested by plaintiffs.

4. *Improper Argument by Counsel for Defendant*

In his argument to the jury, defendant's counsel observed, "Never in my experience have I heard of a disposition of a death of a 22-month-old child with a recovery representing even a low fraction of the amount of money . . . asked for." Plaintiffs objected that this reference to personal

knowledge not in evidence should not be permitted in argument. (*Garden Grove School Dist.* v. *Hendler* (1965) 63 Cal.2d 141, 143 [45 Cal.Rptr. 313, 403 P.2d 721].)

The court at first overruled plaintiffs' objection, but shortly thereafter corrected its error: "Some discussion has arisen between counsel and the Court as to the propriety of counsel's referring to the fact that he had never experienced or known of any verdict of $25,000 in any other case. I want to caution the jury that the only and the sole issue to be determined by the jury in this case is their determination of, first, liability, if any, of the defendant; and, secondly, what damages should be awarded these plaintiffs as based solely and exclusively upon the evidence here without any reference to what happens in some other case, because in some other case the evidence may be entirely different than it is in this case." Plaintiffs show no cause for complaint; misconduct, when promptly corrected by a trial judge, does not entitle the complaining party to reversal. (*Horn* v. *Atchison T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 609-611 [39 Cal.Rptr. 721, 394 P.2d 561]; *Hansen* v. *Warco Steel Corp.* (1965) 237 Cal.App. 2d 870, 878 [47 Cal.Rptr. 428, 48 Cal.Rptr. 164].)

*Conclusion*

The trial court committed serious cumulative errors in removing from the jury's consideration the factually disputed issue of negligent equipage and in failing to give the proffered instruction as to the statutory duty to sound the horn. The court also committed error, though less serious, in refusing to give BAJI Instruction 151 on the duty of care of a driver. Since the evidence at the trial was closely balanced both on the question of the driver's negligence and contributory negligence, we believe that it is reasonably probable that a result more favorable to plaintiffs would have been reached in the absence of these errors. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed.

Traynor, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. The instruction requested by plaintiffs on the sounding of a horn was this: "California Vehicle Code, Section 27001, in effect at the time of the accident, provided in relevant part as follows: 'The driver of a motor

vehicle, when reasonably necessary to insure safe operation shall give audible warning with his horn.' '' The requested instruction failed to quote the last sentence of the code section, which specifies that ''The horn shall not otherwise be used.''

As stated by Presiding Justice Files in the opinion prepared by him for the Court of Appeal, Second District, Division Four, when this case was before that court (64 Cal.Rptr. 49, 51-52 [2]), the statute, read as a whole, indicates that the horn is not to be used unless some particular circumstance calls for it. To tell the jury that the first sentence of the section alone is the ''relevant part'' would be misleading in the context of this case. The driver testified that he saw five children approach the truck, the two Blanchard children and two Menchaca children, sisters of the deceased Richard, and another little girl whom he saw go home; that he observed that all four Blanchard and Menchaca children had returned to a position of safety before he started his vehicle; that at no time prior to the accident had he observed Richard. This was corroborated by a neighbor who saw Richard go down the Blanchard driveway to the left front of the truck while the driver's back was turned.

The jury could have concluded that the driver had no more reason to sound his horn on this occasion than would any other driver starting such a vehicle in a residential area. Under the general instructions on the subject of negligence the jury was of course at liberty to consider whether failure to sound a horn in this instance violated the standard of the reasonable man. But to have squarely presented the issue to the jury in terms of the Vehicle Code section, it would have been necessary to include the qualification contained in the second sentence.

*Weiss* v. *Baba* (1963) 218 Cal.App.2d 45, 51-52 [11, 12] [32 Cal.Rptr. 137], appears to be the only case holding that failure to instruct in terms of only the first sentence of section 27001 was error. However, that opinion does not mention the second sentence of the section and apparently no one raised the contention that omission of the second sentence rendered the instruction defective.

Additionally, in that case, which involved a nighttime collision of two vehicles at an intersection where visibility was limited by hedges, trees and parked cars, defendant had admitted seeing the lights of plaintiff's vehicle. Such a fact situation differs materially from that in the present case, in

which the driver testified without contradiction that he was completely unaware of the little child's presence.

Since in the instant case plaintiffs' requested instruction was inaccurate and misleading, it is my view that failure to give it was not error and provides no ground for reversal on appeal.

McComb, J., concurred.