[Civ. No. 34498. Second Dist., Div. Four. May 20, 1970.]

STEPHEN NEVAREZ, a Minor, etc., Plaintiff and Respondent, v. THRIFTIMART, INC., Defendant and Appellant.

## COUNSEL

Brill, Hunt, DeBuys & Burby, Henry E. Kappler and James A. Nickoloff for Defendant and Appellant.

Rainer & Moriarity and I. Warren Rainer for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—Defendant Thriftimart, Inc. appeals from a judgment for money damages rendered against it in an action brought for the personal injuries sustained by plaintiff Stephen Nevarez, a minor. The issue involves the

liability, if any, of a grocery store for injuries sustained by the three-year-old plaintiff when he ran into a public street and was struck by an automobile driven by a third party. Appellant's chief, and primary, contention is that the evidence was insufficient to establish any basis for liability and that its various motions for nonsuit, directed verdict, and judgment n.o.v. should have been granted.[1] A brief summary of the evidence relating to this contention ensues, indulging as we must, in all inferences favoring the judgment.

On May 7, 1960, the plaintiff was three years old and lived with his father and his father's sister, Frances, his grandmother Porfiria, and his two young brothers and a sister at 1423 Woodworth Street in the city of San Fernando, California. The house was on the north side of the street, located about mid-block between Huntington Street to the west and Workman Street to the east. Across from it, on the south side, was the Mission Plaza shopping center.

Thriftimart, Inc. was the operator of a chain of grocery stores and, on the date mentioned, was conducting the "grand opening" of a new store located in the shopping center, the store building being set back approximately 75-85 feet south from Woodworth Street, with parking space occupying the intervening area, and a large parking area lying to the east of the building. In connection with the opening, it had arranged for the erection of various carnival rides, such as a Ferris wheel, auto ride, "Tinkertown" train and merry-go-round, which were located in the northeast corner of the shopping center parking lot. As another attraction, ice cream was given away at a booth located near the northeast corner of the store building and cotton candy and popcorn also were being given away.

At about noon on May 7th plaintiff's aunt, Mary Nevarez, arrived from the nearby area of Sylmar with her own four children to attend the opening. She escorted her children across the street to the carnival and then returned to plaintiff's house where she sat on the front porch for one and one-half hours to the time when the accident occurred, watching activities across the street. It was a Saturday afternoon and there was a large crowd at the opening, including children. A number of cars were parked along the curbing on both sides of Woodworth Street. During the hour and a half she sat on the porch, Mary Nevarez saw many vehicles driving on Woodworth Street and many people arriving at and leaving the carnival area.

While the aunt was sitting on the front porch she saw an automobile

---

[1]Of these, only the order denying the motion for judgment n.o.v. is appealable, Code of Civil Procedure section 904.1, subdivision (d), but the notice of appeal is from the judgment, only, and no appeal is taken from the order. However, as to the authority of this court under such circumstances, see Code of Civil Procedure section 629.

driven westbound on Woodworth "quite fast for that kind of street,"[2] heard the sound of brakes and a thump and, running to see what happened, she saw the plaintiff lying in the street partly underneath the car. Plaintiff, his brothers and sister, had been taken to the carnival that morning by their grandmother. They had come home and gone inside the house for lunch approximately 10-15 minutes before the accident occurred. No one saw plaintiff leave the house. Plaintiff had run between two of the cars parked on the north curbing and into the street where he was struck by the automobile driven westbound by defendant Mendoza.[3]

██ It is appellant's contention that the evidence outlined fails to raise any duty of care on the part of appellant or that such duty, if existing, was violated. Respondent, on the other hand, contends that the rules regarding liability of street vendors laid down in *Schwartz* v. *Helms Bakery Ltd.* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68] should be held to raise a duty of care which here was violated. ██ It is axiomatic that without " 'a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member . . .' " no negligence can be found. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 53].) Whether such a duty is owed in a given situation is a question of law for the court to determine. (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 749 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]; *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307-309 [29 Cal. Rptr. 33, 379 P.2d 513] (overruled on other grounds in *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 748 [69 Cal.Rptr. 72, 441 P.2d 912]).)

To determine if any duty on appellant's part existed we first examine *Schwartz, supra.* That decision reversed a judgment of nonsuit against a four-year-old plaintiff. The driver of defendant's retail bakery truck saw plaintiff at a street intersection. The boy wanted to buy a doughnut and asked the driver to wait while he ran home to get a dime. The driver knew where he lived up the street and told the boy he would meet him there. He drove past the boy's house and stopped across the street. The boy came to the curb, shouted, "Hey, wait!" and ran from behind a parked car into the street and into the path of an oncoming vehicle. The court said (p. 236): "We explain that since the driver undertook to direct the conduct of the child, he entered into a legal relationship with him. A second and concomitant legal relationship arose between the child and the driver when the driver invited the child to become a customer of his business. From each such relationship the common law imposes a duty . . . ."

The first ground stated above is unrelated to the evidence in the case at

---

[2] The only estimates as to the actual speed of the automobile showed it to be traveling 10-15 miles per hour.

[3] Mendoza was a defendant in the case but the claim against him was settled, with court approval, on the fifth day of trial and he was excused from the trial.

hand. ■ That ground recites the common law concept relating to volunteers, requiring one to use reasonable care who, having no obligation to do so, undertakes to proceed affirmatively. *Hayes* v. *Richfield Oil Corp.* (1952) 38 Cal.2d 375, 384 [240 P.2d 580]. No new concept was stated nor any new duty declared. (*Schwartz, supra,* at pp. 238-239, 242. And see: footnote 4: "We create no new duty in this case but leave to the jury the question whether the driver prudently performed a duty long established by the common law.")

The second ground stated in *Schwartz* requires a discussion of the special rule relating to street vendors, which our Supreme Court likened to duties owed by the possessor of property to persons entering thereon, stating: (pp. 242-243) "By soliciting the child's business and arranging to meet him at the appointed location, the driver expressly invited the child to become his customer. The driver, as invitor, therefore, may be held to the duty of exercising such reasonable care for plaintiff's safety in the immediate vicinity of the truck as would be expected of an ordinarily prudent man in the same circumstances." ■ Though the duty of care of the occupier of property arises from his right to control his own premises, such duty may be imposed when he invites intended customers to use, in conjunction therewith, another's property over which his right of control is, perhaps, more apparent than actual. (*Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 401 [170 P.2d 5]; *Van Wye* v. *Robbins* (1941) 48 Cal.App.2d 660, 662 [120 P.2d 507].)

■ In the cases just cited, as well as those wherein the occupier of premises has the right to control the property (as: owner in possession, lessee, etc.), the occupier has a duty to use ordinary care to maintain the premises in a condition reasonably safe for persons coming thereon. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]; Civ. Code, § 1714.) This rule relates to the physical condition of the premises, as such. ■ Where, however, it is the conduct of a third party on the premises which directly causes the injury, liability may attach only where the possessor of the premises has reasonable cause to anticipate such conduct and the probability of resulting injury, and fails to take affirmative steps to control the wrongful conduct. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793]; *Hunter* v. *Mohawk Petroleum Corp.* (1959) 51 Cal.2d 439 [334 P.2d 193]; *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802, 809-810 [167 P.2d 729]; *Young* v. *Desert View Management Corp.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848] (petition for hg. by Supreme Court den.); *Richter* v. *Adobe Creek Lodge* (1956) 143 Cal.App.2d 514 [299 P.2d 941]; *Porter*

v. *California Jockey Club, Inc.* (1955) 134 Cal.App.2d 158 [285 P.2d 60]; *Baley* v. *J. F. Hink & Son* (1955) 133 Cal.App.2d 102, 110-112 [283 P.2d 349]; *Worcester* v. *Theatrical etc. Corp.* (1938) 28 Cal.App.2d 116 [82 P.2d 68].)

In the case at bench, it is obvious that appellant had no control over Woodworth Street or of automobilists, such as defendant Mendoza, using it. ■ The power to control public streets and regulate traffic lies with the state which may delegate local authority to municipalities (Veh. Code, §§ 21100, 21102; 25 Cal.Jur.2d 124-127, Highways and Streets, §§ 238-240) and only the state (Veh. Code, § 21352) or local authorities, when authorized (Veh. Code, § 21353), may erect traffic signs or signals, all other persons being forbidden to do so (Veh. Code, § 21465) with some few exceptions (Veh. Code, §§ 21400, 21468). Nor could appellant lawfully use barricades to block off traffic on Woodworth or any other abutting street since, to do so, undoubtedly would constitute a public nuisance. Accordingly, the analogy to the rules relating to the occupiers of premises ends, as being inapt.

The rules laid down for street vendors are founded upon distinctions not here present. ■ Thus, the street vendor is present in the street with his truck; he invites people to do business with him at his truck and in that part of the public street around him; patrons are attracted from predictable groups and locations, arriving along reasonably predictable routes of approach. While the street vendor cannot control traffic on the street around him he can, to a degree, control his own movements, the places where he will do business and, thus, the avenues of approach to it.[4] When the patronage of small children is involved his bell, chimes or whistle invites them to his truck in the street and he thus incurs a duty with respect to their safety, having in mind their often single-minded interest in his wares and their accompanying disregard of traffic. (Cf: *Schwartz, supra; Ellis* v. *Trowen Frozen Products, Inc.* (1968) 264 Cal.App.2d 499 [70 Cal.Rptr. 487].)

■ Street vending cases do not evoke the principles of attractive nuisance (if such a doctrine still is tenable in California since *Rowland, supra*) as the injury in street vending cases usually results not from any condition maintained by the occupant of property, as in attractive nuisance cases, but rather from the active conduct of third party automobilists. While that doctrine may have similarities to the present case, it essentially operates to excuse what otherwise would be a nonactionable trespass by children. (See: *Schwartz, supra,* fn. 2.) Nor is our case comparable to *Menchaca* v. *Helms Bakeries, Inc.* (1968) 68 Cal.2d 535 [67 Cal.Rptr. 775, 439 P.2d 903]

---

[4]For comment on the amorphous nature of the rules regarding street vendors, see: *The Supreme Court of California,* 56 Cal.L.Rev. 1769-1775.

where a street vendor negligently drove his own vehicle over a child in the street.

Here, appellant was not a street vendor. It did not invite children to do business in a particular part of the street or in the street at all, or to approach its attractions over any predictable route. It had no control, or right of control, over the neighboring streets or vehicles using them. It could not, as might a street vendor, bring its wares to the other side of the street and thus control the public area in which it would do business. Children, with or without their parents or other less heedless persons, might come from some distance away and by unlimited street crossings and approaches. To impose a duty of care of the nature contended for by respondent would be to place an unjustifiable burden upon any businessman whose store displays toys or other things attractive to children. Indeed, since small children are notoriously curious about and attracted to anything and everything, the limits to such a duty, if imposed, are not readily visible. Retail establishments would be cast in the role of a modern-day Pied Piper and, as such, obligated to act as parent or babysitter for every tot in the neighborhood who might decide to dash across a public street in order to bask in the store's allure. The attractions offered by appellant and the generalized invitation to enjoy them, thus do not analogize to the conduct of a street vendor.

Our review of the evidence in the present case has not led us to any basis for imposing upon appellant the duty of care claimed by respondent. As a corollary, we can find no violation of a duty and, therefore, no negligence on appellant's part. These conclusions make it unnecessary to discuss other claims of error urged by appellant.

The judgment is reversed and the trial court is instructed to enter judgment for appellant notwithstanding the verdict for plaintiff.

Kingsley, Acting P. J., and Irwin, J.,* concurred.

A petition for a rehearing was denied June 5, 1970, and respondent's petition for a hearing by the Supreme Court was denied September 10, 1970.

---

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.