[No. B031418. Second Dist., Div. Three. Aug. 5, 1988.]

SOUTHLAND CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
VICTOR SPENCER, Real Party in Interest.

COUNSEL

Solish, Jordan & Wiener, James V. Jordan, Jonathan Solish and Lyn Skinner Foster for Petitioners.

No appearance for Respondent.

Fest & Williams and Gerry De Simone for Real Party in Interest.

OPINION

**CROSKEY, J.**—Petitioners, Southland Corporation (Southland) and Jan Lee, Inc. (Lee) (hereinafter collectively petitioners), claiming that they have no duty, as a matter of law, to a customer injured in a criminal assault after he left their property, seek writ relief compelling the respondent Superior Court to grant their motion for summary judgment. As we conclude that this record presents triable issues of fact with respect to (1) petitioners' control over the property where the assault occurred and (2) the foreseeability of such assault, we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 23, 1984, between 7 and 9 p.m., Victor Spencer (Spencer), real party in interest, and his companion, Neil McNeeley, parked in a vacant unpaved lot adjacent to a 7-Eleven Store owned and operated by petitioners. On his way back to his car, after making his purchases at the 7-Eleven, Spencer was attacked by three unknown persons at a location on the lot approximately ten feet *beyond* the easterly boundary of the property leased to the store. His assailants, whom he described as three young men dressed like "a punk rock trio," approached him from behind, which was from the direction of the 7-Eleven. Both Spencer and McNeeley had noticed a group of juveniles leaning against the wall of the 7-Eleven store when they

first arrived. However, neither could later even describe these individuals, much less identify any of them as the assailants.

It is undisputed that neither Southland nor Lee owns or leases the vacant lot, although they acknowledge that many of their customers use it to park. It also seems clear from the record that while a number of paved and marked parking spaces were provided by petitioners *on* the premises of the store, they were not always adequate to provide parking space for all of the customers, many of whom used the vacant lot which, under the petitioners' lease, was apparently available to their customers on a non-exclusive basis.[1] The record reflects that Spencer, who frequently patronized the store, never used the store's marked parking spaces, but always parked his car, as a matter of personal convenience, in the adjacent vacant lot. Spencer's declaration stated that he believed the lot "to be under the control of 7-Eleven and the adjacent business . . . ."

In light of this record, that belief may not have been unreasonable. Neither of the petitioners did anything to discourage their customers from using the vacant lot as a place to park. No fences or signs to discourage such use were erected. It is a fair conclusion that to the extent a greater parking capacity increased sales, then the store realized a commerical benefit from such use of the lot. The record also reflects that the store and its surrounding area was a hangout for local juveniles and from time to time fights broke out. Frequently, the store manager would ask loitering juveniles to leave and, on occasion, would call the police to enforce that request.[2]

---

[1] Petitioners, under the master lease, had a *non-exclusive* right to use two portions of the vacant lot for the ingress and egress of their employees and customers and apparently also had a *non-exclusive* right to use the adjacent lot for extra parking. The relevant portions of the lease which appear to grant petitioners such right are articles 2 and 31, which provide: "2. PREMISES. LESSOR hereby leases to LESSEE and LESSEE leases from LESSOR, for the term and upon the terms and conditions hereinafter set forth, the premises described in Schedule A and shown on the plot plan which is Schedule B . . . and together with the right to use all *adjoining parking areas,* driveways, sidewalks, roads, alleys and means of ingress and egress insofar as LESSOR has the power to lease or license the use thereof . . . . See Article 31.
"31. LESSE'S [*sic*] right to use all *adjoining parking spaces,* driveways, sidewalks, roads, alleys and means of ingress and egress shall be a non-exclusive right subject to the reasonable use in common with others and subject to the non-exclusive rights of others." (Italics supplied.)

[2] This information comes from the deposition of petitioners' store manager, Thomas Rosso, which was taken by Spencer on July 27, 1987, a date subsequent to the filing of Spencer's opposition to the summary judgment motion. Spencer's request to augment the trial record, "if necessary," was apparently refused by the trial court in view of its ruling that triable issues of fact existed. Such testimony, however, was submitted to this court with Spencer's brief and we have elected to treat it as a part of the appellate record. To do otherwise would work an injustice on Spencer since it appears that the only reason the trial court did not agree to receive this supplemental evidence was its prior determination to rule in Spencer's favor.

Spencer filed a complaint for negligence against Southland, as franchisor of the 7-Eleven, Lee, as franchisee of the 7-Eleven,[3] and Roy Gump, individually and doing business as Bouquet Exxon.[4] Subsequently, petitioners filed a joint motion for summary judgment on the ground that Spencer was not injured on property "owned, operated or controlled by Southland" and that Spencer's injuries were not foreseeable inasmuch as there were "no similar previous incidents to the one in which [Spencer] was injured" and "[i]n the seven years prior to this alleged incident, there were no other crimes, no other claims, and no other injuries reported."

Spencer opposed the motions, arguing that whether or not the attack on plaintiff was foreseeable is a "disputed question of material fact" and that there exists "a duty to patrons 'off the business premises' when circumstances causing the injury are within the range of the defendant's reasonable supervision and control."

The motion of petitioners was denied. In its order, the trial court stated that "the issue of control was raised by the following *undisputed* material facts: 1. The defendants were aware that the patrons of the 7-Eleven . . . utilized the vacant lot situated next to its premises for parking . . . . 2. The plaintiff and his companion . . . parked their vehicle in the vacant lot adjacent to the defendant's 7-Eleven store." (Italics supplied.)[5]

A petition for writ of prohibition and/or mandate followed and this court issued an alternative writ.

### ISSUE

This case presents the question of whether triable issues of material fact are present as to the (1) existence of a business proprietor's duty of care with respect to patrons injured by the criminal acts of third persons which occur on property, adjacent to the business premises, which is neither owned nor possessed by the proprietor and, if such duty exists; and (2) whether such criminal acts were reasonably foreseeable. We conclude that the existence of such a duty will depend upon the proprietor's actual or apparent control of the adjacent property and that, under the circumstances

---

[3] Southland leases the store premises from an entity not a party to this action and subleases them to Lee, its franchisee.

[4] Roy Gump is owner of the adjacent parking lot where the attack took place. He has settled with Spencer.

[5] If these two "undisputed" facts were the only evidence going to the issue of control, then summary resolution of that issue in petitioners' favor by the trial court would have been proper, if not required. However, as we discuss below, there were other facts which are not free from dispute which, if believed by a trier of fact, would cast an entirely different light on the question of petitioners' actual or apparent control of the vacant lot.

of this case, triable issues of fact exist as to such control as well as the foreseeability of such criminal conduct. The trial court was therefore correct in denying the summary judgment motion.

## DISCUSSION

■ Summary judgment may be granted only when the evidence in support of the moving party establishes that there is no *issue of fact* to be tried. (Code Civ. Proc., § 437c; *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].) The burden is on the moving party to provide supporting documents that establish that the claims of the adverse party are entirely without merit on *any legal theory. (Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 41 [147 Cal.Rptr. 565]; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) If there is any doubt as to whether summary judgment should be granted that doubt should be resolved in favor of the party opposing the motion. *(Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

1. *A Business Proprietor Clearly Owes a Duty of Care to His Customers Whom He invites Upon His Land.*

The critical and threshold issue presented by the motion of petitioners is whether, under the facts of this case, any duty was owed to Spencer. ■ "It is axiomatic that without ' "a duty of due care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member . . ." ' no negligence can be found. [Citation.] Whether such a duty is owed in a given situation is a question of law for the court to determine. [Citations.]" (*Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803 [87 Cal.Rptr. 50].)

■ "It has long been recognized that 'a possessor of land who holds it open to the public for entry for business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.' [Citations.] Liability will normally be imposed in circumstances where the possessor has reasonable cause to anticipate the misconduct of third persons. [Citations.]" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 807 [205 Cal.Rptr. 842, 685 P.2d 1193].)

"In considering whether one owes another a duty of care, several factors must be weighed including among others: ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' [Citations.]" (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d 799, 806; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

In the case of a business proprietor, the application of these factors leaves little doubt that he owes a clear duty of care to his customers (i.e., his business invitees) to protect them, when they come upon his land, even from the wrongful acts of third persons which the proprietor has reasonable cause to anticipate. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 123-124 [211 Cal.Rptr. 356, 695 P.2d 653]; *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].)

2. *The Duty of a Business Proprietor To His Invitees May Extend to Property Over Which He Exercises Actual or Apparent Control Even if Not Owned or Possessed.*

"A defendant [generally] cannot be held liable for the defective or dangerous condition of property which it did not own, possess or control. . . ." (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 134.) The duty to take affirmative action to protect persons coming upon the property "is grounded in the possession of the premises and the attendant right to control and manage the premises." (*Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d 358, 368.) While it is true that a landowner has a special duty to protect his invitees from the conduct of third persons (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d 799, 806), the imposition of liability on this ground, subject to a number of exceptions not here relevant, is limited to those cases where the plaintiff is injured on premises which are owned, possessed or *controlled* by the defendant.

Here, Spencer seeks to hold petitioners liable for the criminal conduct of unknown third persons which took place on a vacant unpaved lot which they neither owned nor possessed but which adjoined their "business premises." He asserts that they had the power to control loitering on the lot by unsavory individuals. Spencer argues that, "due to the 'frequent congre-

gation' of people and the fact that the area in question is an 'arena' for 'schoolboy tussles' and fights, it would appear that the activity in question is one which could reasonably be anticipated, resulting in the existence or non-existence of a duty becoming a 'material question of fact.'" Relying primarily on *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68], Spencer asserts that a defendant "may owe a duty to patrons 'off the business premises' when circumstances causing the injury are within the range of the defendants' reasonable supervision and control."

In *Schwartz,* a small child was injured when crossing the street to purchase a doughnut from a mobile street vendor. The court held that by undertaking to direct a child to an assigned rendezvous with the doughnut truck, the defendant assumed a duty to exercise due care for the child's safety.[6] It stated that "[t]he physical area encompassed by the term 'the premises' does not, however, coincide with the area to which the invitor possesses a title or a lease. The 'premises' may be less or greater than the invitor's property. The premises may include such means of ingress or egress as a customer may reasonably be expected to use. *The crucial element is control. 'It is clear [for example],* . . . *that if the tenant exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon.'* [Citation omitted.] An invitor bears a duty to warn an invitee of a dangerous condition existing on a public street or sidewalk adjoining his business which, because of the invitor's special benefit, convenience, or use of the public way, creates a danger." (*Id.,* at pp. 239-240, italics supplied.)

Each of the cases relied upon by petitioners where no duty was found to exist involved circumstances where the plaintiff was injured by the criminal or negligent conduct of a third person either in a location remote from defendant's premises (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d 1142, 1146) or on a public street or sidewalk near or adjacent to the defendant's premises. (*Nevarez* v. *Thriftimart, Inc., supra,* 7 Cal.App.3d 799, 806; *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 388 [243 Cal.Rptr. 627]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 725-726 [246 Cal.Rptr. 199].) ■ In each of these circumstances it was clear that the defendant did not and could not

---

[6]It must be noted that at least two cases (*Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr. 405] and *Nevarez* v. *Thriftimart, Inc., supra,* 7 Cal.App.3d 799) have limited the "street vendor" cases to the unique operation of a traveling business. However, what is significant about *Schwartz,* in the context of this case, is its elastic concept of control. The opinion emphasizes that the critical issue is control but recognizes that the exercise of control is not *necessarily* confined to those premises which are owned or possessed by the defendant.

exercise control over the property where plaintiff sustained injury. While the conduct of third persons might have been foreseeable, defendant's clear lack of control made it impossible to have instituted preventative measures. Thus, where the absence of control has been unequivocally established, no basis for finding a duty or imposing liability exists. (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 134; *Preston* v. *Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476].)

The opinion of the court in *Donnell* v. *California Western School of Law, supra,* 200 Cal.App.3d 715, serves to illustrate this rule. There, the plaintiff was injured when he left the defendant's law library building at about 10:30 p.m. and headed toward his parked car. While standing on the public sidewalk he heard the sound of breaking glass. His eventual assailant was breaking into a car parked on the street near the law school building's northwest corner. The plaintiff jogged up to the car, a confrontation took place and during the ensuing struggle plaintiff was stabbed. Plaintiff brought suit against the defendant law school alleging that it had a duty to provide for the security of its students with exterior lighting and security patrols around the law school building. Plaintiff claimed that the law school was aware of criminal activity in the immediate area and that since no student parking was provided by the law school, students had to traverse a dangerous area after leaving the school premises.

The court held that the defendant law school had no duty to protect its adult students[7] from a criminal assault on the sidewalk bordering its building. The court noted that the law school had done nothing to voluntarily assume a duty to protect its students once they had left its premises. The court emphasized that "[t]he law of premises liability does not extend so far as to hold Cal Western liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the condition of such adjoining property." (*Donnell* v. *California Western School of Law, supra,* 200 Cal.App.3d at p. 720.)

■ In this case, however, the question of the extent of the use of the adjacent lot by petitioners and the consequent control over it which they apparently exercised is far from clear. The record reflects evidence, and legitimate inferences therefrom, which would support a jury's conclusion that petitioners did exercise a sufficient control over the lot so as to legally permit the imposition of a duty to those customers using the lot. For example, (1) only eight marked parking spaces were provided on the store's

---

[7] Thus distinguishing those cases which turn on the special relationship between a school and its *minor* students (see, e.g., *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851].) The court in *Donnell* reasoned that the defendant's law students should be regarded as its business invitees.

premises and these often proved inadequate, (2) customers, including Spencer, regularly used the adjacent lot to park while shopping at the store, (3) petitioners' lease apparently authorized the nonexclusive use of the adjacent lot for customer parking, (4) petitioners were aware that their customers regularly used the lot and took no action to limit or discourage such use, (5) a reasonable inference can be drawn that petitioners realized a significant commercial benefit from their customers' use of the lot, (6) the store premises and the adjacent lot had become a hangout for local juveniles, among whom fist fights sometimes broke out, and (7) the store employees had, on a number of occasions, taken action, including the request of police assistance, to remove juvenile loiterers from both the store premises and the adjacent lot.[8]

Thus, this case differs significantly from the public street and sidewalk cases such as *Donnell*. There is far more here than the mere circumstance of petitioners' property being adjacent to property on which dangerous conditions may exist. As already noted, the evidence presented, if believed, would be sufficient to support a jury finding that petitioners had exercised a sufficient, albeit limited, control over the adjacent lot. (*Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 400 [170 P.2d 5].) ██ While it is true that "the duty of care of the occupier of property arises from his right to control his own premises, such duty may be imposed when he invites intended customers to use, in conjunction therewith, *another's property over which his right of control is, perhaps, more apparent than actual.* [Citations.]" (*Nevarez* v. *Thriftimart, Inc., supra,* 7 Cal.App.3d 799, 804.) (Italics supplied.)

██ Where, as here, there is evidence that petitioners received a commercial advantage from property they apparently had a leasehold right to use (which use by their customers they at least passively encouraged) and where their business was itself the attraction for both customers and loiterers, it is overly simplistic for the issue of control to be resolved solely by reference to a property boundary line and the fortuitous circumstance that the attack on Spencer took place just 10 feet beyond it. While we can not conclude that these circumstances establish that petitioners did exercise control over the adjacent lot, we do find that they are sufficient to raise an issue of fact that must be resolved by a jury.

---

[8] Although not disclosed in the appellate record, Spencer's counsel stated in oral argument that flood lights affixed to the east side of the 7-Eleven store provided illumination for customers parking their cars in the adjacent lot. However, as this additional circumstance was apparently not presented to the trial court, we do not consider it here.

### 3. *An Issue of Fact Also Remains to be Resolved With Respect to the Foreseeability of Harm to Spencer.*

"A landowner is not an insurer of the safety of persons on his property. He does, however, have a duty to take reasonable steps to protect invitees from *foreseeable* injury even to the extent of controlling the conduct of third parties." (*Noble* v. *Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 914 [214 Cal.Rptr. 395], original italics.) The duty "does not extend to controlling the misconduct of third persons which he has no reason to anticipate and no reasonable opportunity or means to prevent." (*Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 351 [128 Cal.Rptr. 404].) However, a possessor of land may be liable for foreseeable injuries caused by the accidental, negligent or intentionally harmful acts of third persons. (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 124.) Foreseeability may be decided as a question of law only if, " 'under the undisputed facts, there is no room for a reasonable difference of opinion.' [Citations.]" (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947]); see also, *Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948 [220 Cal.Rptr. 302].)

Petitioners argue that they have established that no prior criminal assaults had ever occurred on the store premises and thus the attack on Spencer could not have been foreseen. However, such evidence is not necessary in order to conclude that such an attack was reasonably foreseeable. "Proof of foreseeability is not limited to evidence of prior similar incidents, since such a role precludes recovery to first-injured victims, and has been held to be inherently unfair and in controvention of public policy." (*Gray* v. *Kircher* (1987) 193 Cal.App.3d 1069, 1074 [236 Cal.Rptr. 891].)

The rule, previously advanced in a number of Court of Appeal decisions, that in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, was firmly and finally rejected in *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 125-126. It is now settled that proof of such prior incidents is not necessary to a finding of foreseeability. (See also, *Kwaitkowski* v. *Superior Trading Co.* (1981) 123 Cal.App.3d 324, 329 [176 Cal.Rptr. 494]; *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 630 [193 Cal.Rptr. 600]; *Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 140-142 [203 Cal.Rptr. 572].)

The evidence presented here by Spencer makes it clear that the question of the foreseeability of the criminal assault upon him remains to be resolved. That issue must be decided in light of all of the circumstances and it "is not to be measured by what is more probable than not, but

includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct. [Citation.] One may be held accountable for creating even the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 57.)

 The experiences of the manager and employees of the 7-Eleven store with juvenile loiterers, fist fights among them and the perceived need to seek police assistance on occasions are not sufficient to establish, as a matter of law, the foreseeability of a criminal assault upon a customer, but such experiences are sufficient to create a triable issue of fact on that question. (Cf. *Gomez* v. *Ticor, supra,* 145 Cal.App.3d 622, 629.) Clearly, this is a question of fact for the jury. (*Cohen* v. *Southland Corp., supra,* 157 Cal.App.3d 130, 140-141.) It cannot be resolved by summary judgment.

### DISPOSITION

The peremptory writ of mandate is denied and the alternative writ heretofore issued by this court is discharged.

Klein, P. J., concurred.

**ARABIAN, J.**—I respectfully dissent.

The majority has concluded that triable issues of fact exist respecting petitioner's control over property owned by another and the foreseeability of a criminal assault which occurred there.

They would allow this matter to proceed against petitioner who claims no duty of care exists on behalf of a person who parks his vehicle, as a matter of personal convenience, on an unowned adjoining vacant lot where he is attacked by unknown assailants. The umbilicus of their reasoning is that inadequate parking existed and Spencer, who has never parked in the spaces provided, had a subjective and reasonable belief that Southland controlled the unpaved lot. They speculate as to increased sales from this off-premises parking and a realization of commercial benefit.

Unrealistically, they comment that petitioner did not erect signs or fences[1] to discourage customer parking in an adjacent area open to all citizens. In any event, the record reflects that in a seven-year period prior to this event no claim for a similar incident, no other crimes or other injuries

---

[1] While good fences make good neighbors, none existed here. Nevertheless, there is an abundance of hedging in the majority opinion.

had been reported as concerns Southland's business operation. So much for the triable issue of foreseeability on the question of a reasonably perceived risk.

Most sadly, the fact that the store manager would ask loitering juveniles to clear the area and, on occasion, would summon law enforcement to preserve the calm and safety of the community, is now used against petitioner on the question of control. "Danger invites rescue. The cry of distress is the summons to relief."[2]

A caring society is ennobled and enriched when citizen observers sound the alarm which seeks a protective response. The majority view has the practical effect of discouraging activities which benefit the victims amongst us. Do they seek to sanction the deafening silence which responded to the cry of Kitty Genovese?

As one cannot generally be held liable for a dangerous condition of non-owned, nonpossessed or noncontrolled property, this elastic extension of exposure under the guise of triability represents a costly and unwarranted imposition of legal burden.

I would grant the writ.

On September 1, 1988, the opinion was modified to read as printed above. Petitioners' application for review by the Supreme Court was denied October 27, 1988. Lucas, J., and Eagleson, J., were of the opinion that the application should be granted.

---

[2] Cardoza, J., *Wagner v. International Ry.* (1921) 232 N.Y. 176, 180 [133 N.E. 437, 19 A.L.R. 1].