[No. B035168. Second Dist., Div. Four. May 9, 1989.]

MONICA A. BALARD, Plaintiff and Appellant, v.
BASSMAN EVENT SECURITY, INC., Defendant and Respondent.

## COUNSEL

Robert J. Young and Jacqueline Gigi Emanuel for Plaintiff and Appellant.

Mercer & Zinder and John J. Miles for Defendant and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—Monica A. Balard (appellant) appeals dismissal of her action against Bassman Event Security, Inc. (respondent) after respondent's demurrer to her second amended complaint was sustained without leave to amend.

 We accept as true the factual allegations of the second amended complaint.[1]

Respondent is a licensed provider of security services and security personnel. Stanley's Restaurant was one of respondent's clients. Stanley's is a

---

[1] In reviewing a demurrer we accept as true material facts alleged in the complaint, but not "contentions, deductions or conclusions of fact or law . . . ." (*C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].) We also disregard appellant's allusions in her brief to facts which were not pleaded in her complaint.

"well-known social meeting place, designed [*sic*] and catering to single men and women, many of whom frequently come to said premises unescorted."

On the evening of May 11, 1985, a security guard employed by respondent was stationed outside the front door of Stanley's "greeting patrons, checking identifications, [and] giving the general appearance that the premises were under his control and, therefore, safe." The guard was told by two female patrons of Stanley's that a group of inebriated men, parked nearby, had verbally harassed them and attempted to coerce them into a car. The women pointed out the men's car to the guard. The men then drove away and reparked across the street. They remained inside their car observing the restaurant.

Ten to twenty minutes after the two women spoke to the guard, appellant, who had been inside Stanley's, left the restaurant to go to her car, which was also parked across the street.[2] The guard failed to warn appellant of the earlier incident of harassment. On her way to her car, appellant was stopped by the men, "kidnapped and subsequently sexually assaulted . . . ."

Appellant brought an action against Stanley's, respondent security system, and her attackers. Both Stanley's and respondent demurred to her first amended complaint. Stanley's demurrer was overruled, but, by peremptory writ, Division Five of this court vacated the order and directed that the demurrer be sustained without leave to amend on the grounds that Stanley's had no liability for a criminal attack off its premises. The demurrer as to respondent was sustained with leave to amend. The purpose of leave was to allow appellant to set forth "factual allegations establishing a duty on the part of [respondent], apart from any that might have arisen out of its contract with STANLEY'S RESTAURANT."

Appellant's second amended complaint alleged causes of action against respondent for negligence, negligent hiring and statutory violation. Respondent demurred. The demurrer was sustained without leave to amend and an order of dismissal entered. Appellant appealed. We affirm.

I

■ Appellant contends that a security services company, such as respondent, occupies a special relationship with the patrons of a business, whose premises the company has been hired to protect, creating a duty by the company to such patrons quite apart from any duty owed by virtue of

---

[2] Stanley's had a parking lot, but it was inadequate for the number of patrons.

the company's position as an agent of the owner of the premises. In support of her contention, appellant relies principally on *Marois* v. *Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193 [208 Cal.Rptr. 384], and, to a lesser extent, on certain provisions of the Business and Professions Code. As we shall demonstrate, appellant's reliance is misplaced. A security company hired to protect business premises owes no greater duty toward the patrons of that business than is owed by the business owner under relevant principles of premises liability law.

■ "Generally a person does not have a duty to control another's conduct or to warn those who may be endangered by such conduct. However, a duty may arise where a special relationship exists giving rise to a right to such protection. [Citation.]" (*Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 719 [246 Cal.Rptr. 199].) ■ Such a special relationship exists "between a business establishment and its customers [which] as a matter of law places an affirmative 'duty' on the proprietor to take reasonable precautions to protect patrons from reasonably anticipative criminal conduct of unknown third parties. [Citations.]" (*Lopez* v. *McDonald's* (1987) 193 Cal.App.3d 495, 504 [238 Cal.Rptr. 436] (italics deleted); *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 123-124 [211 Cal.Rptr. 356, 695 P.2d 653]; *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].) Moreover, the duty is applicable to the agents and employees of the business establishment. (*Vandermost* v. *Alpha Beta Co.* (1985) 164 Cal.App.3d 771, 776 [210 Cal.Rptr. 613].)

The fact that such a duty exists does not mean it should be imposed in all cases. This must be decided on a case-by-case basis (*Vandermost* v. *Alpha Beta Co., supra,* 164 Cal.App.3d at p. 776), and there may be reasons against imposing the duty based on factors generally relevant to the imposition of liability for negligent conduct (*Lopez* v. *McDonald's, supra,* 193 Cal.App.3d at p. 505; cf. *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]). ■ Indisputably, however, the duty will *not* be imposed "for injuries to an invitee from criminal activity occurring off the landowner's premises." (*Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1146 [214 Cal.Rptr. 405].) ■ "A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. [Citations.]" (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at p. 134.)

Although cited to us by neither party, we are also aware of the decision by Division Three of this court in *Southland Corp.* v. *Superior Court* (1988)

203 Cal.App.3d 656 [250 Cal.Rptr. 57]. In *Southland,* a divided court held that, under narrow circumstances, a business may be liable for criminal attacks on a patron which occur on premises not owned by the business but over which "they apparently had a leasehold right to use" and otherwise exercised control. (*Id.,* at p. 667.)

The *Southland* court was careful to proclaim that the case before it differed significantly from those cases involving injury to a plaintiff by criminal conduct "either in a location remote from defendant's premises [citation] or *on a public street or sidewalk near or adjacent to the defendant's premises.* [Citations.] In each of these circumstances it was clear that the defendant did not and could not exercise control over the property where plaintiff sustained injury." (203 Cal. App.3d at pp. 665-666; italics added.)[3]

Finally, contrary to appellant's view of the decision, *Marois v. Royal Investigation & Patrol, Inc., supra,* 162 Cal.App.3d 193, is consistent with and arises in the context of the principles of premises liability law as set forth herein. The plaintiff in *Marois* was assaulted on the premises of a fast-food restaurant by vandals. Security guards, hired by the restaurant's owner, did not come to his aid after their verbal attempts to dissuade his attackers failed. The plaintiff sued both the restaurant and the security services company, Royal, as well as the individual guards. The trial court granted Royal's motion for a nonsuit on the theory that neither it nor the two guards owed plaintiff a duty to act affirmatively to prevent the assault. The Court of Appeal reversed.

The court's discussion of the duty issue makes clear its reliance upon principles of premises liability law. Initially, the court notes "the relationship between a business and its customers is a special one requiring the business 'to take affirmative action to control the wrongful acts of third persons which threaten invitees where [it] has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.' (*Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 . . . .)" (*Marois v. Royal Investigation & Patrol, Inc., supra,* 162 Cal.App.3d at p. 199.)

---

[3] *Southland* involved a criminal attack upon a customer of a convenience store which took place on a lot adjacent to the store's premises. The majority maintained that the lot was routinely used by the store's customers for parking; the store's lease apparently permitted use of the lot for this purpose on a nonexclusive basis; and the store realized "a significant commercial benefit" from use of the lot. Finally, the store had, on occasion, taken upon itself the task of ridding the lot of juvenile loiterers. The reviewing court, in a split decision, reversed summary judgment in favor of the store's parent corporation, concluding that the allegations were "sufficient to raise an issue of fact that must be resolved by a jury." (*Southland Corp. v. Superior Court, supra,* 203 Cal.App.3d at pp. 666-667.) The stinging dissent disagreed with this extension of owner's liability.

The court's citation to the *Taylor* case is significant because that decision is the progenitor of all subsequent decisions which deal with a business establishment's duty to protect its patrons from third party criminal activity on the business's premises. By citing to *Taylor* the *Marois* court positions itself in the mainstream of premises liability law.

Building on this citation, the court then addressed Royal's contention that, notwithstanding the principle set forth in *Taylor,* its security guards owed no duty to protect the customers of the business that hired them for that purpose. The court responded: "Just as a business may be liable under *Taylor* for its failure to take reasonable precautions to protect its customers (including, presumably, its failure to hire a competent security guard where there is such a need), a security guard hired by the business should be liable to an injured customer where the guard fails to act as would a reasonable security guard under similar circumstances and that failure causes the customer's injury. By contracting with the business to provide security services, the security guard creates a special relationship between himself and the business's customers. This relationship, in and of itself, is sufficient to impose on the guard the obligation to act affirmatively to protect such customers *while they are on the business premises*. [Citations.]" (*Marois* v. *Royal Investigation & Patrol, Inc., supra,* 162 Cal.App.3d at pp. 199-200, fn. omitted; italics added.) The omitted footnote to this citation is also important to a proper understanding of the cited language in that the footnote emphasizes the fact that the attack took place "on [the restaurant's] premises." (*Id.,* at p. 200, fn. 3.)

■ An accurate reading of *Marois* does not support appellant's broad claim that that decision creates a special relationship between a business's security guards and its customers which results in a greater liability than that existing between the business itself and its customers. To the contrary, the relationships are essentially identical in that from each there arises a duty to protect the customer from third party criminal activity occurring on the business's premises. What the court did in *Marois* was to examine the duty arising from the contractual relationship between the security services company and the business establishment.[4] The court did not say that, absent this contractual relationship, a security services company owes some general duty toward the public that extends beyond the premises the company was hired to protect. Whether, therefore, the security services company is

---

[4] The two decisions relied on by the *Marois* court support its imposition of liability as a function of the contractual relationship. The cases discuss, respectively, the duty of a security services company to protect social visitors to premises which it was contractually obligated to protect (*Pippin* v. *Chicago Housing Authority* (1979) 78 Ill.2d 204 [35 Ill.Dec. 530, 399 N.E.2d 596, 599-600]), and an agent's double duty to both his principal and third parties (*Dillon* v. *Wallace* (1957) 148 Cal.App.2d 447, 455-456 [306 P.2d 1044]).

characterized as an employee of the business or an independent contractor, its liability is coterminous with that of the business itself.

Inevitably, then, the limits of the duty owed to appellant by respondent in the case before us must be analyzed in light of principles of premises liability law. Those principles, set forth at the outset of this discussion, yield the conclusion that any duty owed by respondent to appellant regarding third party criminal activity was confined to the premises of Stanley's Restaurant. Inasmuch as the attack on appellant took place off the premises, no liability attached to respondent and the action against it was properly dismissed.[5]

■ At oral argument before this panel, appellant shifted the focus of the duty discussion from a duty to intervene to a duty to warn. She argued that a security guard has a duty to warn customers who are on the business premises of a known danger existing off the premises. In the case before us, the security guard would have been required to warn appellant of the earlier incident of harassment of other female patrons. Although this argument has surface appeal, upon closer consideration, we must reject it.

The problem is that a duty to warn in the context of dangers existing off premises will seldom be as simple as passing along unverified information. Inevitably, we would be imposing not just a duty to warn but a duty to investigate, monitor and evaluate reports of off-premises dangers. Given the potential scope of this duty, we are reluctant to impose it at all.

In this case, for example, the danger known to the security guard was the threat to female patrons of verbal abuse, not actual physical assault. Should we limit his duty to warn to what he knew at the time, or expand it in light of what ultimately transpired, under the rubric of foreseeability? Each solution has its inequities and the entire matter is further complicated by questions of what constitutes a known danger and how great an area surrounding the premises is the sphere within which the duty to warn applies.

Let us consider a plaintiff who is robbed several blocks away after exiting a business establishment in an area known to have a high incidence of robbery. The victim could plausibly argue that the owner of the business

---

[5] Appellant suggests that, in the event no duty applies, reasons of public policy compel the creation of such duty in this case. To the contrary, such considerations support this result. (See *Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at p. 1147 [discussing the impossibility of defining scope of duty owed by a landowner over premises which he or she neither owns nor controls].) While we are wholly sympathetic to appellant's plight, we do not agree that the creation of such a duty is, in fact, compelled by policy considerations.

had a duty to warn of the risk of being robbed even without having specific information of an immediate danger. In short, imposing a duty to warn in the context of this case has far-reaching ramifications which ultimately force us to decline to impose such a duty.

## II

Appellant also argues that respondent violated a statutory duty owed to her which she finds in section 7521, subdivisions (b) and (g) of the Business and Professions Code. These subdivisions provide definitions of "[a] private patrol operator, or operator of a private patrol service" (Bus. & Prof. Code, § 7521, subd. (b)) for licensing purposes.[6] These subdivisions do not purport to create a tort duty by their terms nor does appellant cite us to any authority which so construes them. We decline to do so.

The judgment of dismissal is affirmed. Respondent to recover costs.

George, J., Goertzen, J., concurred.

---

[6] Business and Professions Code section 7521, subdivisions (b) and (g) provide: "(b) A private patrol operator, or operator of a private patrol service, within the meaning of this chapter is a person, other than an armored contract carrier, who, for any consideration whatsoever: [¶] Agrees to furnish, or furnishes, a watchman, guard, patrolman, or other person to protect persons or property or to prevent the theft, unlawful taking, loss, embezzlement, misappropriation, or concealment of any goods, wares, merchandise, money, bonds, stocks, notes, documents, papers, or property of any kind; or performs the service of such watchman, guard, patrolman, or other person, for any of these purposes."

"(g) A security guard or security officer, within the meaning of this chapter, is an employee of a private patrol operator who performs the functions as described in subdivision (b) on or about the premises owned or controlled by the customer of the private patrol operator or in the company of persons being protected."