[No. D007483. Fourth Dist., Div. One. July 21, 1989.]

BARBARA K. YANASE et al., Plaintiffs and Appellants, v. AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Paul L. Tepper for Plaintiffs and Appellants.

Waters, McCluskey & Boehle and Fritz B. Hax for Defendant and Respondent.

OPINION

TODD, Acting P. J.—After a change of venue of the case from Los Angeles County Superior Court to San Diego County Superior Court, the trial court granted the motion of Automobile Club of Southern California (Auto Club) for judgment on the pleadings with respect to the third amended complaint for damages of Barbara K. Yanase, Sumiye R. Yanase and Craig A. Yanase (Yanase), widow and children of George A. Yanase (decedent). Decedent was killed as a result of being shot by an unknown assailant at night in a parking lot of a motel in which decedent was staying. The motel, located in a high crime area, was listed and rated in a "Tourbook" published and distributed by Auto Club.

The theory of Yanase's complaint against Auto Club is negligent misrepresentation, i.e., that decedent, a member of the Auto Club, and Auto Club had a special relationship and decedent relied on Auto Club's motel listing and rating in the Tourbook with respect to which Auto Club negligently failed to determine and publish information on the safety of the area and the existence and effectiveness of security measures. It is alleged that as a result of such negligence by Auto Club, decedent was killed and Yanase was damaged.

Yanase contends the trial court erred in granting Auto Club's motion for judgment on the pleadings on the ground the second and third counts in the third amended complaint fail to state facts sufficient to constitute a cause of action against Auto Club. Yanase's contention on appeal addresses only the ruling on the second count alleging negligent misrepresentation and thus we limit our decision to that contention. Finding no error in the trial court's ruling because the second count fails to state a cause of action, we affirm.

FACTS

■ The third amended complaint forms the basis for review of the propriety of granting a motion for judgment on the pleadings. The review is the same as if a general demurrer had been sustained since the motion had the purpose and effect of a general demurrer. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3].) On general demurrer it is the rule that we must "assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)

Yanase's third amended complaint alleges in the second count that one Shu-Yun Chan (Chan) owned, operated, maintained and controlled the

Royal Lodge-Downtown (motel) and its appurtenant parking lot at 833 Ash Street in San Diego. On January 25, 1984, decedent was a paying guest at the motel. At about 10 p.m. on January 25, decedent was returning to the motel and parked his vehicle in the lot adjacent to it. An unidentified individual or individuals confronted decedent and shot him, causing injuries which resulted in his death.

Decedent was a paid-up member of Auto Club which made various services available to him including automobile towing services, travel assistance and various types of insurance. The payment of annual dues and the package of matters made available to decedent by Auto Club "gave rise to a special relationship defined by a dependency and reliance upon said Defendant by Decedent in all matters of vehicular travel and services connected therewith."

American Automobile Association (AAA)[1] and Auto Club are also in the business of endorsing travel accommodations and services through their Tourbook. They charged an annual fee to travel service establishments for permission to those establishments to display the AAA emblem and its use in advertising. Auto Club's Tourbook contains a listing of various hotels and motels in designated geographical areas and a rating system with reference to those accommodations.

As set forth in the third amended complaint, the 1983 California/Nevada edition of the Tourbook states: " 'This Tourbook has only one purpose: to make your trip as enjoyable as possible by providing *accurate, detailed information* about attractions and accomodations [*sic*] in the area through which you are traveling . . .' (page 3 of Tourbook)

" 'AAA field representatives cover the length and breadth of the North American Continent. These efficient, highly trained individuals are constantly on the move, carefully and systematically searching the highways for accomodations [*sic*] and restaurants which meet AAA's requirements for recommendation to our more than 22 million members . . .'

" '*For every establishment selected to be listed in the Tourbooks, many others were inspected and found to be lacking in some important consideration. We believe, in the best interests of our members, that our standards are important.* We will not lower them simply to achieve a greater volume of listings.' (page 161 of Tourbook - emphasis added)" (Original italics.)

---

[1] The status of the AAA as a party in the case is not clear from the record on appeal. AAA was not a party to the general demurrers heard in the Los Angeles Superior Court, the last of which was overruled. Nor was AAA a party to the motion for judgment on the pleadings or the ensuing judgment in favor of Auto Club.

The Tourbook designates the motel with a rating meaning it "[s]ignificantly exceeds AAA requirements in many physical and operational categories. Offers very comfortable and attractive accomodations [sic]." The Tourbook also states, "No attraction, hotel, motel, resort or restaurant pays for a listing. Each is listed on the basis of merit alone, after careful inspection and approval by a AAA field representative or designated AAA representative."

Yanase's third amended complaint then alleges that because of the relationship between decedent and Auto Club and the business of endorsing travel accommodations and services engaged in by AAA and Auto Club, the defendants had a duty through their field representatives to determine the relative safety of the area where the recommended hotels and motels were located, to determine the existence and effectiveness of the security measures offered to the patrons and to publish the information in the Tourbook. The defendants, it is alleged, "through their field representatives, failed to exercise reasonable care in that they failed to make the aboveal-leged [sic] determinations, and said Defendants also failed to exercise reasonable care in that they failed to publish such information in the Tourbook." Further, Yanase alleges that had Auto Club exercised reasonable care it would have known the motel "was located in a high crime area wherein robberies and muggings were commonplace in the immediate radius of the motel and that the motel offered inadequate security for its patrons."

Decedent read the Tourbook and relied on it in selecting the motel and he would not have selected the motel if Auto Club had determined it was in a high crime area and offered inadequate security, published this information in the Tourbook, or not recommended the motel at all. It is alleged that as a proximate result of Auto Club's negligent failure "to properly inspect and to warn, as alleged above, Decedent was attacked and shot at the Royal Lodge - Downtown receiving injuries which resulted in his death."

Damages allegations conclude the second count of the third amended complaint.

DISCUSSION

Initially, on the matter of a cause of action for negligent misrepresentation, this tort consists of making a false statement honestly believing it is true but without reasonable ground for such belief. (Civ. Code, §§ 1710,

subd. 2; 1572, subd. 2;[2] 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720 et seq., p. 819 et seq.) ■ The tort is a form of deceit without, however, the element of scienter. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487, fn. 4 [275 P.2d 15].) Since the tort requires a "positive assertion," the doctrine does not apply to implied representations. (*Huber, Hunt & Nichols, Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 304 [136 Cal.Rptr. 603].)

■ There is nothing in the Auto Club's Tourbook listing or rating that consists of a positive assertion concerning neighborhood safety or the security measures taken in connection with the motel. In fact, as we discuss in more detail below, those matters are not even implied in the Tourbook listing or rating. Accordingly, the third amended complaint does not state facts sufficient to constitute a cause of action in negligent misrepresentation.

■ We next consider the question of whether there exists a duty of care, a question of law to be determined on a case-by-case basis. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653]; *Gray* v. *Kircher* (1987) 193 Cal.App.3d 1069, 1073 [236 Cal.Rptr. 891].)

In a case involving a suit against the host and sponsor of a party held at the host's leased premises in an industrial park, where the plaintiffs' decedent was killed by an assailant in another part of the industrial park after she had left the party and was returning to her parked car, the court set forth the following rule pertaining to duty of care: " 'Liability founded upon a claim of negligence cannot exist unless a duty of care is owed by the alleged wrongdoer to the person injured or to the class of which the injured person is a member. [Citations.] In California, it is well settled that an owner of land held open for business purposes may have a duty to protect visitors from the wrongful acts of third persons. [Citation.] Whether such a duty in fact exists is a question of law to be determined separately in each case, based on the weighing of a number of factors. [Citation.]' (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 627 [193 Cal.Rptr. 600].)" (*Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142, 1145 [214 Cal.Rptr. 405].)

Relying in part on *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 134, *Steinmetz* held neither the lessee nor the sponsor of the

---

[2] Civil Code section 1710, subdivision 2, defines a deceit as including, "The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."

Civil Code section 1572, subdivision 2, defines actual fraud as including, "The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

party owed a duty of care to the decedent for the injury occurring on premises they neither owned nor controlled. (*Steinmetz, supra,* 169 Cal.App.3d at pp. 1147-1148.)

In *Isaacs* the court addressed the liability of an insurer of a hospital located in a high crime area where the plaintiff was shot by an unknown assailant while preparing to get into his car in the hospital's parking lot at about 10 p.m. one night. (*Isaacs, supra,* 38 Cal.3d at pp. 120-121, 134-135.) The insurer had provided the hospital with some information on whether the hospital's security guards should be armed, but had made no specific recommendation on the subject. (*Id.* at pp. 134-135.) The insurer had no ownership or possessory interest in the hospital's premises and exercised no authority or control over the hospital's security practices. (*Ibid.*) Upholding a summary judgment in favor of the insurer, the Supreme Court states: "A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control." (*Id.* at p. 134.)

Similarly, this court has stated: "[O]ne will not be held liable for failing to control third-party conduct or to warn those who may be endangered by that conduct, unless ' "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." ' " (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 505-506 [238 Cal.Rptr. 436], quoting *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193].)

As is pointed out in *Steinmetz, supra,* 169 Cal.App.3d at page 1146, "[t]he duty to take affirmative action for the protection of individuals coming upon the land 'is grounded in the possession of the premises and the attendant right to control and manage the premises.' " (Quoting *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 368 [178 Cal.Rptr. 783, 636 P.2d 1121].)

"Generally a person does not have a duty to control another's conduct or to warn those who may be endangered by such conduct. However, a duty may arise where a special relationship exists giving rise to a right to such protection." (*Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 719 [246 Cal.Rptr. 199].) A special relationship exists between the owner, possessor or controller of a business establishment and its customers placing on the proprietor an affirmative duty to take reasonable precautions to protect patrons from wrongful acts of third persons where the proprietor has reasonable cause to anticipate those acts and the

probability of injury resulting from them. (*Isaacs, supra,* 38 Cal.3d at p. 123; *Lopez, supra,* 193 Cal.App.3d at p. 504.)

Under these principles it has been held recently that a company providing security guard service to a restaurant owes no duty of care in the form of a duty to warn a second customer of reported verbal harassment of earlier customers by persons known by the guard to be parked across the street from the restaurant. (*Balard* v. *Bassman Event Security, Inc.* (1989) 210 Cal.App.3d 243 [258 Cal.Rptr. 343].) The second customer was kidnapped and sexually assaulted by the persons in the car after she left the restaurant. Part of the court's rationale in *Balard* was: "In the case before us, the security guard would have been required to warn appellant of the earlier incident of harassment of other female patrons. Although this argument has surface appeal, upon closer consideration, we must reject it.

"The problem is that a duty to warn in the context of dangers existing off premises will seldom be as simple as passing along unverified information. Inevitably, we would be imposing not just a duty to warn but a duty to investigate, monitor and evaluate reports of off-premises dangers. Given the potential scope of this duty, we are reluctant to impose it at all.

"In this case, for example, the danger known to the security guard was the threat to female patrons of verbal abuse, not actual physical assault. Should we limit his duty to warn to what he knew at the time, or expand it in light of what ultimately transpired, under the rubric of foreseeability? Each solution has its inequities and the entire matter is further complicated by questions of what constitutes a known danger and how great an area surrounding the premises is the sphere within which the duty to warn applies.

"Let us consider a plaintiff who is robbed several blocks away after exiting a business establishment in an area known to have a high incidence of robbery. The victim could plausibly argue that the owner of the business had a duty to warn of the risk of being robbed even without having specific information of an immediate danger. In short, imposing a duty to warn in the context of this case has far-reaching ramifications which ultimately force us to decline to impose such a duty." (210 Cal.App.3d at pp. 250-251.)

It occurs to us that if those closely connected with the safety of premises, such as hired security guards, are not subject to a duty even to warn of possible danger represented by nearby third persons not on the premises, then a fortiori those having no particular connection with the premises, such as Auto Club, have no duty of care. ■ This conclusion is supported by cases such as *Balard, supra,* 210 Cal.App.3d 243, and the general

principle announced in *Donnell, supra,* 200 Cal.App.3d at page 719, that there is no duty to control the conduct of third parties or to warn those who may be endangered by that conduct except where there exists a special relationship giving rise to a right to such protection. (See also *Gray* v. *Kircher, supra,* 193 Cal.App.3d 1069, 1072-1075.)

■ The fact Auto Club's Tourbook gives "information about attractions and accomodations [*sic*]" places no new or special dimension on the analysis. So far as we are concerned in this case the Tourbook speaks only of accommodations, i.e., "something that is supplied for convenience or to satisfy a need . . . lodging, food, and services (as at a hotel) . . . ." (Webster's Third New Internat. Dict. (1968 ed.) p. 12.) Enjoyability of a trip through providing information about accommodations is the stated purpose of the listing and rating in the Tourbook. Nothing is said about inspecting for dangerous neighborhoods or determining the presence or absence of personal security measures taken by the owners of the accommodations on behalf of their patrons. The puffing statements concerning the efforts of AAA's representatives in searching for accommodations and inspecting them do not suggest neighborhood safety or security measures are aspects of the listing and rating. In fact, the rating description quoted in the complaint speaks only of "physical and operational categories," "comfortable and attractive accomodations [*sic*]" and listing "on the basis of merit alone." Again, the quality of "accommodations" is the focus of the Tourbook listing and rating.

From what we have said it follows that the alleged special relationship "defined by a dependency and reliance" on Auto Club "in all matters of vehicular travel and services connected therewith," if it exists at all, is limited to the listing and rating of accommodations and does not include within its scope matters of neighborhood safety or security measures.[3]

This conclusion, in part, serves to distinguish Yanase's case from *Hanberry* v. *Hearst Corp.* (1969) 276 Cal.App.2d 680 [81 Cal.Rptr. 519, 39 A.L.R.3d 173] in which it was held a purchaser of defectively manufactured and designed shoes stated a cause of action for damages against Hearst, publisher of "Good Houskeeping" magazine, where the purchaser relied on the "Good Houskeeping Consumer's Guaranty Seal" in an advertisement in

---

[3] The present case is to be contrasted with cases such as *McCollum* v. *Friendly Hills Travel Center* (1985) 172 Cal.App.3d 83, 91, 94 [217 Cal.Rptr. 919], where a travel agent who arranges vacation plans is held to be a special agent for the purpose of the transaction between the parties and thus to owe a duty to disclose reasonably obtainable material information to the traveler unless the information is so clearly obvious and apparent to the traveler that, as a matter of law, the travel agent would not be negligent in failing to disclose it.

Here, of course, Auto Club had no such special agency relationship with decedent.

the magazine and placed on the shoes and shoe box container for them. The shoes were slippery and unsafe on commonly used floor coverings. As a result, the purchaser slipped and fell, injuring herself, when she stepped on the vinyl floor of her kitchen. The Good Housekeeping seal was described in Hearst's magazine as "Good Housekeeping's Consumer Guaranty" and it was stated, " 'We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful.' " The seal bears the promise, " 'If the product or performance is defective, Good Housekeeping guarantees replacement or refund to consumer.' " (*Id.* at pp. 682-683.)

In *Hanberry* this court held that "one who endorses a product for his own economic gain, and for the purpose of encouraging and inducing the public to buy it, may be liable to a purchaser who, relying on the endorsement, buys the product and is injured because it is defective and not as represented in the endorsement." (276 Cal.App.2d at p. 683.) At a minimum, as we have seen, the "products" in the present case, motel accommodations, are as represented in the endorsement in the Tourbook which does not deal with neighborhood safety or security measures. Thus, the last element of the *Hanberry* holding is not fulfilled. Further, in *Hanberry* there is a very close relationship between the injury and the product when put to ordinary use within the scope of the endorsement. No such relationship exists in the present case.

Moreover, the plaintiff in *Hanberry* was not basing her claim for damages on a concept closely analogous to premises liability as to which the key is ownership, possession or control. (*Isaacs, supra,* 38 Cal.3d at p. 134.) Rather, the liability concept in *Hanberry,* though labeled as negligent misrepresentation, was more analogous to products liability, the court noting Hearst "voluntarily involved itself into the marketing process, having in effect loaned its reputation to promote and induce the sale of a given product . . . ." (*Hanberry, supra,* 276 Cal.App.2d at p. 684.)[4] Such involvement in the chain of commerce, as distinguished from the concept of control of the premises, is fundamental to the concept of products liability. (See, e.g., *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) Accordingly, the *Hanberry* decision furnishes no support for Yanase's position.

Finally, we observe that Auto Club's listing and rating of motels and hotels in the Tourbook serves essentially the same purpose as an advertise-

[4] It should be observed that *Hanberry* rejected the plaintiff's contention Hearst could be sued on a cause of action for strict liability in tort, noting there was no authority to support such a theory of recovery, the theory would subject Hearst to liability not warranted by the circumstances and, in any event, the question was not before the court which said, "Our decision should not be construed as expressing any view on the subject." (*Hanberry, supra,* 276 Cal.App.2d at p. 687, fn. 3.)

ment. As in *Walters* v. *Seventeen Magazine* (1987) 195 Cal.App.3d 1119, 1122 [241 Cal.Rptr. 101], "we are loathe to create a new tort of negligently failing to investigate the safety of an advertised product."

We conclude the trial court properly granted the motion for judgment on the pleadings on the basis the second cause of action of the third amended complaint fails to state a cause of action because Auto Club owed Yanase no duty of care with respect to neighborhood safety or security measures at motels listed and rated in the Tourbook.

## DISPOSITION

Judgment affirmed.

Benke, J., and Froehlich, J., concurred.