# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIE TOOMER; JAYA M. LITTLE, a
minor through her guardian ad
litem, Dylin Baruso; DYLIN
BARUSO,

　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

UNITED STATES OF AMERICA,
　　　　　　*Defendant-Appellee.*

No. 08-56749

D.C. No.
3:06-cv-00860-
JAH-LSP

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
February 4, 2010—Pasadena, California

Filed August 18, 2010

Before: Betty B. Fletcher, Harry Pregerson and
Susan P. Graber, Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge Pregerson

12171

---

**COUNSEL**

Sean T. O'Bryan, San Diego, California, for the plaintiffs-appellants.

Steve B. Chu, Assistant U.S. Attorney; San Diego, California, for the defendant-appellee.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Marie Toomer and Jaya Marie Little ("Appellants"), the mother and daughter of Roderick Little ("Little"), appeal the district court's order granting summary judgment to the United States. Appellants brought suit under the Federal Tort Claims Act ("FTCA"), claiming that negligence by the United States caused Little's death. Little was standing in the parking lot of the Del Taco restaurant located across the street from the 32nd Street Naval Base ("Naval Base") in San Diego, California, when he was shot and killed by Myron Thomas ("Thomas"). Prior to the shooting, Little and Thomas had been fighting at Club Metro, a bar and dance club located on the Naval Base and operated by the United States. We hold that the United States is not liable for Little's death. Under California law, the United States' duty to protect Little from foreseeable criminal conduct extended only to the Naval Base, not to the Del Taco restaurant, which was outside the United States' ownership and control. We affirm.

**BACKGROUND AND PROCEDURAL HISTORY**

Club Metro is a bar and dance club located inside the Naval Base. It is operated by the U.S. government. Because fights

at Club Metro are common, customers are required to pass through metal detectors before entering, and Club Metro posts security guards at the entrance and inside the building.

Roderick Little and Myron Thomas were at Club Metro the night of November 18, 2003. Each was with a group of friends. The two parties got into a fight on the dance floor. Security personnel intervened and put an end to the physical violence, although the Thomas group continued to make threatening gestures at Little and his friends. When Little's group left the club, they were confronted by the Thomas party, and another fight broke out in the parking lot. Club Metro security guards again intervened and instructed both groups to leave the Naval Base. They complied, although Thomas had to be physically restrained and brought back to his car by his friends.

The Naval Base posted two military security officers, Darrell Gordon and Juan Salazar, at the exit from the base. The officers were assigned to direct traffic, which was typically very heavy around the time Club Metro closed at 1:30 a.m. A dark car with shiny rims and military decals drove past the officers, and they heard someone inside the car say, "I'm going to do a 187." Both officers understood this to be a threat of murder; section 187 of the California Penal Code covers murder. Cal. Penal Code § 187. The person in the car was later identified as Thomas. Neither of the officers could see him at the time, and they were not able to take down the car's license plate number. Officer Gordon intended to report the threat to dispatch, which would have then notified the local police, but he was tied up directing traffic. Later Gordon did go over to the guard booth to use the phone to report the threat. Just as he picked up the receiver, he heard shots ring out.

Meanwhile, Thomas went to the apartment of Sergeant Kayzoski Sanders, his supervisor and friend. Thomas was living with Sanders temporarily. Thomas took Sanders's AK-47

automatic rifle. Sanders knew that Thomas had the automatic rifle and that Thomas was dangerous. He called Thomas to try and persuade him to return to the apartment. Instead, around 2:30 am, Thomas drove with a friend to the Del Taco restaurant located across the street from the Naval Base, where Club Metro patrons tended to hang out after the club had closed. Little was standing in the parking lot of the restaurant. While his friend was at the wheel, Thomas shot in the direction of Little and his friends. Little was killed, and several others were injured.

Subsequently, Thomas was convicted of second-degree murder.

Marie Toomer, Little's mother, and Jaya Marie Toomer, Little's daughter, brought suit against the United States for wrongful death, claiming that Little's death was the result of negligence by the United States. After discovery was complete, the district court granted summary judgment in favor of the United States, holding that California law did not impose on the United States an affirmative duty to protect Little from violent acts that occurred off the Naval Base. Plaintiffs now appeal.

## DISCUSSION

[1] Under the FTCA, the United States can be held liable for Roderick Little's death if "a private individual under like circumstances" could be held liable for his death under California tort law. 28 U.S.C. § 2674. Appellants argue that the United States should be treated like a private night club operator for FTCA purposes. *See United States v. Olson*, 546 U.S. 43, 46-47 (2005). Based on that assumption, Appellants advance two theories of liability. First, the United States owed Little an affirmative duty to protect Little from third-party criminal conduct. Second, the United States voluntarily provided security services at Club Metro and had a duty to exer-

cise reasonable care in performing those services. Appellants argue that the United States failed in both duties.

We agree with the district court that California law does not impose on the United States an affirmative duty to protect Little from criminal activity occurring outside the Naval Base. Even if the United States had such a duty, it was not obligated to protect Little from Thomas's criminal conduct because the drive-by shooting was not reasonably foreseeable. Furthermore, because the United States did not increase the risk of harm to Little by providing security services at Club Metro, it cannot be held liable on a negligent undertaking theory. We therefore affirm the district court's order granting summary judgment in favor of the United States.

## I. Affirmative Duty to Protect Little from Thomas's Criminal Activity

[2] The first element of any negligence claim is the existence of a duty. *See Vasquez v. Residential Invs., Inc.*, 12 Cal. Rptr. 3d 846, 853 (Ct. App. 2004). Generally there is no obligation to protect others from the harmful conduct of third parties. However, California law imposes an affirmative duty on business proprietors to protect their customers from foreseeable third-party criminal conduct, an obligation that is derived from the special relationship between a business proprietor and his customers. *See Morris v. De La Torre*, 113 P.3d 1182, 1187-88 (Cal. 2005).

Appellants argue that the United States, as the owner and operator of Club Metro, owed Roderick Little three specific affirmative duties. First, the United States had a duty to undertake "reasonable and minimally burdensome measures," such as calling 911, to protect Little from imminent or ongoing criminal activity. *See id.* at 1188. Second, the United States had a duty to take more burdensome measures, such as hiring security guards, to protect Little from highly foreseeable third-party crime. *Ann M. v. Pac. Plaza Shopping Ctr.*,

863 P.2d 207, 215 (Cal. 1993). Third, because the United States was Thomas's landlord, it could be held "liable for failing to address the presence of a dangerous tenant or other person on or about the property." *Hawkins v. Wilton*, 51 Cal. Rptr. 3d 1, 6 (Ct. App. 2006).

**[3]** All three of these duties are specific instances of a landowner's "general duty of maintenance, which is owed to tenants and patrons." *Id.* (internal quotation marks omitted). The duty of maintenance is limited to the landowner's property. *See Castaneda v. Olsher*, 162 P.3d 610, 615 (Cal. 2007) ("A landlord generally owes a tenant the duty . . . to take reasonable measures *to secure areas under the landlord's control* against foreseeable criminal acts of third parties." (emphasis added)); *Morris*, 113 P.3d at 1191 (duty to take reasonable and minimally burdensome measures to protect customers from ongoing criminal activity extends "*to areas within the proprietor's control*" (emphasis added)); *Hawkins*, 51 Cal. Rptr. 3d at 6 ("A landlord may also be liable for failing to address the presence of a dangerous tenant or other person *on or about the property*." (emphasis added)). While the United States did owe the above three duties to Little when he was at Club Metro, those obligations ended when Little drove off the Naval Base. The United States did not have a duty to protect Little while he was at the Del Taco restaurant. Where there is no duty, there can be no negligence.

Appellants argue that the United States need only have violated its duty to protect Little while Little was on the Navy Base; the injury resulting from that violation, Little's death, need not have also occurred on the Navy Base. Appellants are incorrect. There is no California Supreme Court decision squarely on point, but intermediate appellate courts have held that, if a proprietor is to be held liable in tort for the criminal activity of third parties, that criminal activity must have occurred on the proprietor's property. *See Mata v. Mata*, 130 Cal. Rptr. 2d 141, 146 (Ct. App. 2003) ("[A] landowner or possessor generally has no duty to take measures to prevent

foreseeable violence occurring off the premises."); *Medina v. Hillshore Partners*, 46 Cal. Rptr. 2d 871, 874 (Ct. App. 1995) ("Here the trial court ruled that landowner breached no duty of care because the wrongful death involved an off-site shooting. We agree."); *Martinez v. Pac. Bell*, 275 Cal. Rptr. 878, 882-83 (Ct. App. 1990) ("Pac Bell did not own, possess, or control, and invited no one onto, the parking lot. It, thus, owed no duty of care to protect appellant at that location."); *Balard v. Bassman Event Sec., Inc.*, 258 Cal. Rptr. 343, 346 (Ct. App. 1989) ("[A]ny duty owed by respondent to appellant regarding third-party criminal activity was confined to the premises of Stanley's Restaurant."); *Southland Corp. v. Superior Court*, 250 Cal. Rptr. 57, 61-62 (Ct. App. 1988); *Steinmetz v. Stockton City Chamber of Commerce*, 214 Cal. Rptr. 405, 407-09 (Ct. App. 1985).[1]

---

[1]The dissent relies on the California Supreme Court's decisions in *Morris v. De La Torre*, 113 P.3d 1182, 1184-89, 1194 (Cal. 2005), and *Ann M. v. Pacific Plaza Shopping Center*, 863 P.2d 207, 213-14 (Cal. 1993), for the proposition that a business proprietor has a duty to protect his customers "against foreseeable criminal attacks that become imminent on property within the proprietor's control, even where the attack culminates on property outside the proprietor's control." Neither *Morris* nor *Ann M.*, however, concerned criminal attacks that occurred outside the defendant's property, and do not answer the case at bar.

In *Morris*, the plaintiff was punched and stabbed in the defendant's parking lot, and then stabbed several more times on a nearby sidewalk. 113 P.3d at 1186. The California Supreme Court focused exclusively on the initial fistfight and stabbing and emphasized that the defendant was liable for those attacks because the parking lot was "subject to defendant's sole use and control." *Id.* at 1191. The court said nothing about the second stabbing, leaving it unclear whether the defendant was liable for the portion of the attack that occurred outside the defendant's property.

The decision in *Ann M.* is also silent on the issue of whether a business owner can be held liable for criminal attacks that occur outside his property. In *Ann M.*, the court considered whether the landlord of a shopping center breached its duty to maintain the common areas of the shopping center in a reasonably safe condition because it did not employ security guards to patrol those areas. 863 P.2d at 209. The plaintiff was attacked while working in a store in the mall. *Id.* at 210. The landlord was responsi-

Even if the United States' affirmative duty to protect extended beyond the Naval Base, the United States still could not be held liable for Little's death because his death was not the result of foreseeable criminal activity. *See Morris*, 113 P.3d at 1188; *Ann M.*, 863 P.2d at 214 ("[F]oreseeability is a crucial factor in determining the existence of duty.").[2] For

---

ble for the common areas of the mall but not the stores, which it leased to tenants. *Id.* at 209-10. The court explained that a landlord can be held liable for crimes that occur within a tenant's unit, even though the landlord may not control that unit, so long as the crime was the result of the landlord's failure to maintain common areas within its control. *Id.* at 213 (citing *Frances T. v. Vill. Green Owners Ass'n*, 723 P.2d 573 (Cal. 1986); *O'Hara v. Western Seven Trees Corp., Intercoast Mgmt.*, 142 Cal. Rptr. 487 (Ct. App. 1977)). The California Supreme Court focused on the obligation of a landlord to protect tenants who are inside his property, and said nothing about the obligation of a business owner to protect customers who venture off his property.

The California Supreme Court has never squarely addressed whether business owners can be held liable for crimes that do not occur on their property. Several intermediate appellate courts in California have held that they cannot. *See supra* at 12178-79. Those decisions are not inconsistent with *Ann M.* or *Morris*, and we are bound to follow them. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) ("[W]hen (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.").

[2]To determine the scope of a business owner's affirmative duty to protect, California courts consider the factors listed in *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968):

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

example, in *Morris*, the California Supreme Court held that the foreseeability requirement was satisfied because the attack against the plaintiff "actually occurr[ed] in plain view" of the defendant business owner. 113 P.3d at 1189. And in *Delgado v. Trax Bar & Grill*, the court held that the defendant bar owner should have foreseen that plaintiff was going to get into a fight with another restaurant customer, 113 P.3d at 1162, because plaintiff's wife told a security guard at the bar that there was going to be a fight between her husband and the third customer, the guard asked plaintiff to leave the bar in order to separate him from the other customer, and the guard saw the customer follow plaintiff into the parking lot, *id.* at 1172.

**[4]** The only indication the United States had that Thomas was going to kill Little was when two security guards at the exit from the Navy Base heard someone in a passing car say, "I'm going to do a 187." Although the guards understood this statement as a death threat, they did not see who made the threat, know who was the target of the threat, or see the license plate number of the car. Nor did they know whether the threat was real or, instead, empty bravado. Even if the officers had known that the threat was sincere and had known who the intended target was, they could not have known that Thomas was going to go back to Sanders's apartment, pick up a gun, return more than half an hour later to the Del Taco restaurant several blocks away from the exit at which they were stationed, and shoot Little in cold blood. *See, e.g.*, *Wiener v. Southcoast Childcare Ctrs., Inc.*, 88 P.3d 517, 525 (Cal. 2004); *Morris*, 113 P.3d at 1189; *Ann M.*, 863 P.2d at 216. The crime was not foreseeable and, therefore, the United States did not have a duty to protect Little from that crime.

---

*See also Morris*, 113 P.3d at 1192. While all of these considerations are relevant, foreseeability is both relevant and necessary. *See Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1166 (Cal. 2005). Because we conclude that Thomas's drive-by shooting was not foreseeable, we need not address the other *Rowland* factors.

## II.   Negligent Provision of Security Services

**[5]** Appellants also argue that the United States, having chosen to provide security services at Club Metro, failed in its duty to exercise due care in providing those services. *See Delgado,* 113 P.3d at 1175. Under the negligent undertaking doctrine, a volunteer may be held liable for trying to protect others only if, in so doing, he increases the risk of harm to third parties. *See id.*; *Paz v. State*, 994 P.2d 975, 981 (Cal. 2000). To measure increased risk, we must compare the risk of harm to Little that existed on the night of the shooting with the risk that would have existed had the United States provided no security services at Club Metro, not with the risk that would have existed had the United States provided reasonably competent security services. *See Paz*, 994 P.2d at 981. Because Little would not have been safer had there been no security guards at Club Metro, Appellants' negligent undertaking claim fails.

## III.   Landlord Theory of Liability

**[6]** Finally, Appellants argue that their final claim against the United States, that the United States had a duty as Thomas's landlord to protect third parties from Thomas once it became aware that Thomas was dangerous, survived summary judgment because the district court did not specifically address this claim in its summary judgment order. Even if this claim had been clearly pled in the Complaint,[3] it would fail on the merits; if the United States had an affirmative duty to protect Little from tenants it knew to be dangerous, that duty extended only to the Naval Base, not to the Del Taco restaurant where Little was killed.

   **AFFIRMED.**

---

[3]The Complaint nowhere mentions that the United States is liable for Thomas's criminal conduct because it was Thomas's landlord. The Complaint does not even contain the word "landlord."

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent.

1. **Consideration of the *Rowland* factors, including foreseeability, demonstrates that the United States owed Navy Seaman Roderick Little a duty**

In this case we must decide whether the United States owed Navy Seaman Roderick Little a duty to take reasonable steps to protect him from Marine Lance Corporal Myron Thomas's deadly criminal attack. The majority concludes that the United States did not owe Seaman Little a duty because Lance Corporal Thomas's attack was not foreseeable. I respectfully disagree.

Plaintiffs, Seaman Little's mother and minor daughter, brought suit against the United States under California negligence law pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. § 2674 (providing that, subject to certain exceptions, the United States may be sued in the same manner and to the same extent as a private individual under like circumstances); *Trenouth v. United States,* 764 F.2d 1305, 1307 (9th Cir. 1985) (explaining that where a plaintiff brings suit under the Federal Tort Claims Act, courts apply the law of the state in which the alleged tort occurred).

Under California negligence law, business proprietors (such as owners of bars, restaurants, and shopping centers) may have a special-relationship-based duty to take reasonable steps to protect their tenants, patrons, or invitees against foreseeable criminal acts of third parties. *Morris v. De La Torre*, 113 P.3d 1182, 1184 (Cal. 2005); *Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1165 (Cal. 2005); *Ky. Fried Chicken of Cal. v. Superior Court,* 927 P.2d 1260, 1263 (Cal. 1997); *Ann M. v. Pacific Plaza Shopping Ctr.*, 863 P.2d 207, 212 (Cal. 1993).

As the California Supreme Court has explained, a proprietor's duty is determined by considering the factors set forth in *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968), in light of the circumstances of the case. *See Morris*, 113 P.3d at 1192; *Delgado*, 113 P.3d at 1172; *Ky. Fried Chicken*, 927 P.2d at 1263-1264; *Ann M.*, 863 P.2d at 212. The *Rowland* factors are:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Morris*, 113 P.3d at 1192; *Ann M.*, 863 P.2d at 212 n.5. Foreseeability is the most important of these factors. *Delgado*, 113 P.3d at 1166 n.15.

Viewing the evidence in the light most favorable to the Plaintiffs, as we must on an appeal from the district court's grant of summary judgment, and examining the totality of the circumstances in this case, Lance Corporal Thomas's fatal attack against Seaman Little was foreseeable. *See Wiener v. Southcoast Childcare Ctrs., Inc.,* 88 P.3d 517, 519 (Cal. 2004) (explaining that on appeal from summary judgment, the evidence is viewed in the light most favorable to the appellant); *Ann M.,* 863 P.2d at 214 (explaining that foreseeability is determined by totality of the circumstances).

Club Metro is a bar and dance club located on the 32nd Street Naval Base in San Diego. On November 18, 2003, Lance Corporal Thomas and his friends attended Club Metro

on the club's weekly Hip Hop Night. Seaman Little and his friends attended Club Metro that same night.

Club Metro security personnel, which consisted of active duty U.S. Navy Shore Patrol and civilians, knew that there was a history of violence at Club Metro. In the three years preceding Seaman Little's death, at least fifty fights had occurred at Club Metro's weekly Hip Hop Night, approximately thirty of which resulted in arrests.

At about 11:45 p.m. on the night in question, Lance Corporal Thomas and his friends got into a fight on the dance floor with Seaman Little and his friends. Security personnel intervened, but Lance Corporal Thomas, Seaman Little, and their friends continued to exchange hostile words and gestures.

As they were leaving Club Metro at about 1:30 a.m., Lance Corporal Thomas challenged Seaman Little to a fight in the Club Metro parking lot. Club Metro security personnel, believing that the altercation would become violent if they did not intervene, physically separated the two groups. Even after they were physically separated, however, Lance Corporal Thomas, Seaman Little, and their friends continued to argue. Club Metro security personnel ordered the men to leave the base. At that point, Lance Corporal Thomas's friends had to physically restrain him to stop him from attacking Seaman Little or Seaman Little's friends. During this brouhaha, Club Metro security personnel overheard spectators suggest that the men continue their fight off base at the Del Taco, a fast food restaurant located across the street from the North West corner of the Naval Base where people often gathered after leaving Club Metro.

At about 2:00 a.m., two security guards, both Navy Masters-at-Arms ("MA"),[1] saw the car in which Lance Corpo-

---

[1] "The MA rating provides Navy Ships and commands with force protection/antiterrorism specialists who assist in maintaining good order and

ral Thomas was a passenger run a stop sign as the car approached the exit that the guards were manning. The guards also overheard Lance Corporal Thomas and his friends arguing with Seaman Little and his friends in a nearby car.

Shortly thereafter, as Lance Corporal Thomas and his friends drove off the Naval Base, the two guards stationed at the exit heard one of the car's passengers shout, "We're going to do a 187." When another passenger told the first speaker, "shh, there goes the military police," the first speaker, responded, "I don't give a fuck. We're still going to do a 187." The guards testified that when they heard this exchange, they put their hands on their guns and took cover because they understood the "187" statement to be a murder threat. The guards did not, however, stop the car to investigate further, and although they intended to report the murder threat to Naval Base authorities, they failed to do so. Additionally, one of the guards saw the car with the passenger who had just shouted the murder threat drive toward the Del Taco, where it was well known that people often gathered after leaving Club Metro.

After leaving the base, Lance Corporal Thomas went and got an AK-47. He then returned to the Del Taco, where he shot and killed Seaman Little, who was standing in the parking lot with his friends. The exit guards who had heard the murder threat, heard the deadly shots ring out; they were still thinking about reporting the murder threat. Based on all the events that took place on the Naval Base, Lance Corporal Thomas's fatal attack against Seaman Little was foreseeable.

discipline, law enforcement, and physical security duties. MA's enforce appropriate orders and regulations, make apprehensions, conduct investigations/interrogations and prepare required records and reports. Due to the unique functions and trust inherent in the MA rating, the quality of personnel selected is of paramount importance and requires strict adherence to eligibility criteria." United States Navy, https://www.cool.navy.mil/enlisted/desc/ma_description.htm (last visited April 29, 2010).

Other *Rowland* factors also support the conclusion that the United States owed Seaman Little a duty to take to take reasonable steps to protect him against Lance Corporal Thomas's foreseeable criminal attack. First, the degree of certainty that the Plaintiffs, Little's mother and minor daughter, suffered injury is absolute: Seaman Little is dead. Second, a duty in these circumstances promotes the policy of preventing future harm by encouraging proprietors to take minimally burdensome measures, like calling 911, when a volatile situation makes an imminent criminal attack foreseeable. Finally, a duty to take reasonable, minimally burdensome measures, such as calling 911, to prevent a foreseeable criminal attack on a patron is a minor burden to proprietors. Thus, on balance, the *Rowland* factors, including foreseeability, support the conclusion that the United States owed Seaman Little a duty to take reasonable, minimally burdensome steps to protect him from Lance Corporal Thomas's fatal attack.

**2.   A proprietor's duty does not turn on where a foreseeable criminal attack ultimately culminates**

The majority concludes that even if Lance Corporal Thomas's fatal criminal attack was foreseeable, the United States did not owe Seaman Little a duty because the attack did not happen at Club Metro but instead happened at the Del Taco, across the street from the Naval Base. I respectfully disagree.

Under California negligence law, business proprietors may owe their tenants, patrons, or invitees a duty to take reasonable, minimally burdensome measures to protect them against foreseeable criminal attacks that become imminent on property within the proprietor's control, even where the attack culminates on property outside the proprietor's control. *See Morris*, 113 P.3d 1182, 1184-89, 1194 (Cal. 2005); *Ann M.*, 863 P.2d 207, 213-214 (Cal. 1993).

In *Morris*, the California Supreme Court found that a restaurant proprietor had a duty to take reasonable and minimally

burdensome measures to protect a patron from a criminal attack that culminated on a public sidewalk. *Morris*, 113 P.3d at 1186, 1194. In that case, third parties instigated a fight with several restaurant patrons in a parking lot that was under the restaurant's control. *Id.* at 1186, 1190. While in the parking lot, one of the third parties, in full view of the restaurant employees, stabbed one of the patrons. *Id.* at 1186. The patrons fled. *Id.* None of the employees called 911 or took any other measures to prevent further attack. *Id.* The third parties tracked down one of the patrons on a nearby public sidewalk and attacked him a second time, stabbing the patron several more times. *Id.*

The California Supreme Court in *Morris* noted that the attack culminated on the public sidewalk. *Id.* Nonetheless, applying the *Rowland* factors, the California Supreme Court concluded that the proprietor had a duty to take reasonable and minimally burdensome measures to protect the patron. *Id.* at 1194. *Morris* thus illustrates that whether a proprietor has a duty to take reasonable, minimally burdensome measures to protect a patron from a criminal attack turns on the foreseeability of the attack and the other *Rowland* factors, not where the attack finally culminates.

The majority in this case concludes that a proprietor's duty to take reasonable steps to protect patrons from third party attacks is limited to attacks that take place on property under the proprietor's control. To support this view, the majority cites the California Supreme Court's statement in *Morris* that a proprietor's duty extends "to areas within the proprietor's control." Maj. at 12178 (citing *Morris*, 113 P.3d at 1191). Because the attack in *Morris* culminated on a public sidewalk, the majority's analysis implicitly reads *Morris* as holding that although a proprietor's duty may extend to criminal attacks that commence on property within the proprietor's control and then continue on property outside of the proprietor's control, a proprietor's duty may not extend to foreseeable criminal attacks that become imminent on property within the propri-

etor's control but actually commence on property outside the proprietor's control. Other language in *Morris* and prior California Supreme Court precedent, however, illustrate that this reading of *Morris* is incorrect.

Indeed, elsewhere in *Morris*, the California Supreme Court specifically explained that its foreseeability analysis "involv-[ed] a proprietor's duty to respond reasonably to criminal conduct that is *imminent* or even *ongoing* in his or her presence . . . ." *Id.* at 1189 (emphasis added). The court reasoned that "when assaultive conduct is imminent" it does not require philosophical "mastery" or "economic risk analysis to appreciate the strong possibility of serious injury to persons against whom such imminent . . . criminal conduct is aired." *Id.* This language illustrates that a proprietor's duty may extend to foreseeable criminal attacks that become imminent on property within a proprietor's control, not just to criminal attacks that actually begin on property within a proprietor's control.[2]

This broader reading of *Morris* is also supported by reasoning in *Ann M.* (*Ann M.*, 863 P.2d at 213-216), an earlier California Supreme Court case cited to in *Morris* (*See,* e.g., *Morris*, 113 P.3d at 1187, 1188). In *Ann M.*, the California Supreme Court concluded that the fact that the criminal attack occurred on property outside the proprietor's control did not preclude the existence of a duty on the part of the proprietor.

---

[2]The majority also cites the California Supreme Court's statement in *Castaneda* that "[a] landlord generally owes a tenant the duty . . . to take reasonable measures to secure areas under the landlord's control against foreseeable criminal acts of third parties." Maj. at 12178 (citing *Castaneda v. Olsher*, 162 P.3d 610, 615 (Cal. 2007)). This positive statement, however, does not necessarily support the negative inference that a proprietor's duty never extends to foreseeable criminal attacks that become imminent on property within the a proprietor's control but culminate on property outside the proprietor's control. *See United States v. Turkette,* 452 U.S. 576, 591 (U.S. 1981) (noting that "negative inferences" need not be drawn from positive statements in legislative history). This is especially true in light of the fact that Castaneda did not involve property outside the proprietor's control. *Castaneda*, 162 P.3d at 613-14.

*Ann M.*, 863 P.2d at 213 ("[T]he existence of a duty on the part of Pacific Plaza to Ann M. is not precluded . . . by [Pacific Plaza's] lack of control over the premises where the crime occurred."). Instead, the California Supreme Court explained, the heart of the inquiry was whether the criminal attack could have been reasonably anticipated. *Id.*

*Ann M.* involved a proprietor's duty to safely maintain the common areas within his control to protect tenants and invitees from foreseeable, future criminal attack (*Id. at* 213-216), not a proprietor's duty to take reasonable measures to protect patrons from a foreseeable, imminent criminal attack. In both cases, however, a proprietor's duty is governed by the *Rowland* factors. *Morris*, 113 P.3d at 1192; *Ann M.*, 863 P.2d at 212 n. 5. Therefore, the reasoning employed by the California Supreme Court in *Ann M.* is also instructive when determining a proprietor's duty to protect a patron from a foreseeable, imminent criminal attack.

In sum, I conclude that under California negligence law, a proprietor may owe patrons a duty to take reasonable, minimally burdensome measures to protect them from foreseeable criminal attacks that become imminent on property within the proprietor's control, even where the criminal attack ultimately culminates on property outside the proprietor's control.

## 3.  Conclusion

Applying California negligence law to the facts of this case, the United States owed Seaman Little a duty to take reasonable, minimally burdensome measures to protect him from Lance Corporal Thomas's foreseeable and deadly criminal attack. This is why I respectfully dissent.